IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-02187-PSF-BNB

F. DAVID SLUSHER,

Plaintiff,

v.

ENDRE SAMU,
CORI SALAMENO,
AL ESTEP,
BILL RUSHER,
SHANE JOHNSON,
DELAYNE TORNOWSKI,
JIM DAY,
RICHARD E. HOWARD,
TREVOR WILLIAMS,
BOB KAHANIC,
TIM O'BRIEN,
JOHN REILLY,
MIKE KELLY,
BUTCH RAGLAND, and
JERRY BRIGGS,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the defendants' **Motion to Dismiss Plaintiff's Revised**

**Prisoner Complaint [etc.]** [Doc. # 76-1, filed 9/2/05] (the "Motion").  I respectfully

RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

**I.  STANDARD OF REVIEW**

The plaintiff is proceeding *pro se*.  I must liberally construe the pleadings of a *pro se*

plaintiff.  Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate

for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of

Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

   In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded

allegations as true, and must construe all reasonable inferences in favor of the plaintiff.  City of

Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537

F.2d 385, 386 (10th Cir. 1976).  "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416

U.S. 232, 236 (1974).  A claim should be dismissed only where, without a doubt, the plaintiff

could prove no set of facts in support of his claims that would entitle him to relief.  Id.

## II.  BACKGROUND

   The plaintiff currently is incarcerated by the Colorado Department of Corrections

("DOC") at the Fremont Correctional Facility.  He filed his initial Prisoner Complaint on

October 22, 2004.  I made the following observations about the initial Complaint:

> The plaintiff begins by briefly listing Claims One through Six.
> These claims do not name any specific defendant(s), nor do they
> provide specific supporting facts.  For example, Claim III states:
>
>> Defendants violated Plaintiff Slusher's right to be
>> free from RETALIATION for his activities of
>> redressing grievances and accessing the courts,
>> pursuant to the First Amendment; and rights to due
>> process and equal protection under the law pursuant
>> to the Fifth and Fourteenth Amendments; when they
>> denied him due process before, after, and during the
>> prison disciplinary actions in this matter, all for
>> purposes of RETALIATION and intimidation.
>
> The supporting facts for Claims One through Six are found in the
> following eight typewritten, single-spaced pages.  These eight pages
> consist of 63 paragraphs which painstakingly detail numerous

2

events.  The supporting facts for Claims One through Six are not
addressed in any discernable order, thereby necessitating a
dissection of the 63 paragraphs in order to attempt to discern which
facts apply to which claim, and which claim applies to which
defendant(s).  I decline to attempt to define the plaintiff's causes of
actions for him.

*Order issued July 20, 2005* (internal citations omitted).

Based on these observations, I found the initial Complaint to be prolix and confusing.  The

Complaint was stricken for failure to comply with Rule 8, Fed. R. Civ. P., and Rule 10.1E,

D.C.COLO.LCiv.R.  The plaintiff was ordered to submit a revised complaint which (1) states

each claim separately; (2) identifies which defendant(s) the claim is brought against; and (3)

briefly alleges facts sufficient to state a claim for relief.

The plaintiff filed his Revised Prisoner Complaint (the "Complaint") on August 11, 2005.

The Complaint asserts seven claims, each with multiple sub-claims, against fifteen defendants.[1]

The defendants are all officials at the Limon Correctional Facility ("LCF"), where the plaintiff was

previously incarcerated.  The plaintiff states that all of the claims are based on the defendants'

alleged retaliation against him for filing a lawsuit in 2001 and for filing grievances on unspecified

dates while he was housed at the Limon Correctional Facility.  *Complaint*, p. 4.  The plaintiff

seeks declaratory and injunctive relief and nominal, compensatory, and punitive damages.  Id. at

pp. 18-19.

Each of the plaintiff's claims is based on different factual allegations.  Nevertheless, he

asserts in each claim a violation of his "right to be free from RETALIATION for redressing

---

[1]The claims against Anthony A. DeCesaro have been dismissed.  *Order on Magistrate
Judge's Recommendation of February 6, 2006*.  Therefore, I do not address any of the plaintiff's
allegations against DeCesaro.

3

grievances, in violation of the First, Fifth and Fourteenth Amendments."[2]  Although this rote

recitation of violations does not comport with the spirit of my order of July 20, 2005, I will

attempt to discern whether the plaintiff's claims allege sufficient facts to state a claim for each of

the alleged violations.[3]

### III.  ANALYSIS

The plaintiff brings his action pursuant to 42 U.S.C. § 1983 which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Claim I

Claim One contains the following allegations:

1.  On October 19, 2002, facility staff took the plaintiff's legal papers during a facility-

wide shakedown.  Defendants Tornowski and Howard directed the staff to remove the papers and

conspired to arrange for destruction of the papers.  *Complaint*, p. 5.

2.  The plaintiff attempted to recover his legal materials after he was released from

segregation.  He was told that the files had to be mailed out of the facility by November 22, 2002,

---

[2]Claim Four asserts an Eighth Amendment violation in addition to claims for retaliation
and violation of the First, Fifth and Fourteenth Amendments.

[3]Insofar as the plaintiff attempts to bring claims other than those I identify, the claims are
unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.
1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of
the burden of alleging sufficient facts on which a recognized legal claim could be based").

or they would be destroyed as directed by Tornowski and Howard.  The defendants knew that the plaintiff did not have anywhere to mail the materials; he had no other copies of the materials; and he would be unable to continue this case and other active law suits without the materials.  Id.

    3.   The materials were immediately returned to the plaintiff after the defendants became aware that he had filed a motion for injunctive relief to prohibit destruction of the papers.  Id.

    4.   LCF has an unwritten policy and practice that inmates will not be required to comply with the DOC's volumetric restrictions on legal materials until they are transferred to another facility.  Under LCF's unwritten policy and practice, inmates are permitted to maintain up to three cubic feet of active materials.  The plaintiff never exceeded this amount.
Id. at pp. 5-6.

    Claim One alleges that defendants Tornowski, Howard, Johnson, and the LCF Management Team violated the plaintiff's right to be free from retaliation for redressing grievances in violation of the First, Fifth, and Fourteenth Amendments when they took his legal files and threatened to destroy them.  Id. at p. 5.  I construe Claim One to allege violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights.

### 1.  Retaliation

    The law regarding retaliation against an inmate for exercising his First Amendment right to access the court is well-established.[4]  "Prison officials may not retaliate against or harass an

_____

[4]The defendants assert that Worrell v. Henry, 219 F.3d 1197 (10th Cir. 2000), establishes the law regarding retaliation in this case.  However, Worrell does not address prison officials'

inmate because of the inmate's exercise of his rights to access the courts." Smith v. Mashner, 899

F.2d 940, 947 (10th Cir. 1990).  "This principle applies even if the action taken in retaliation

would be otherwise permissible." Id. at 948.  The right of meaningful access to the courts

includes an inmate's right to utilize established prison grievance procedures. Id. at 947.

An inmate, however, is not "inoculated from the normal conditions of confinement

experienced by convicted felons serving time in prison merely because he is engaged in protected

activity." Peterson v. Shanks, 149 F.3d 1140,1144 (10th Cir. 1998).  Therefore, to prevail on a

claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to

which he refers . . . would not have taken place." Id. (quotations and citation omitted).  "An

inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of

the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

The presentation of circumstantial evidence such as temporal proximity, a chronology of

events, or suspicious timing may be sufficient to support allegations of retaliation. See Smith, 899

F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means

available to him--circumstantial evidence of the suspicious timing of his discipline, coincidental

transfers of his witnesses and assistants"); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)

(holding that the plaintiff's allegations of a "chronology of events" may be read as "providing

some support for an inference of retaliation");  Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th

---

retaliation against an inmate for exercising his First Amendment right to access the courts.
Worrell identifies the analysis that courts must undertake when a public employee alleges that an
official outside the employing agency has engaged in retaliatory conduct based on the employee's
exercise of free speech.  In my analysis of this case, I look to the well-established law regarding
retaliation against an inmate for exercising his First Amendment right to access the courts, not to
Worrell.

Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation).

The plaintiff fails to allege any specific facts to demonstrate that "but for the retaliatory motive," the defendants would not have taken his legal materials on October 19, 2002.  The plaintiff does not allege any relationship between the filing of a grievance and the confiscation of his legal materials.  The only relationship alleged between the filing of a civil lawsuit and the defendants' actions is that defendants Tornowski and Howard directed the confiscation of the plaintiff's legal materials more than ten months after the plaintiff filed a civil action.  *Complaint*, pp. 4-5.  The relationship between the plaintiff's law suit and the defendants' actions is tenuous in the extreme.  Consequently, I find that the plaintiff's first claim fails to state a claim for retaliation.

### 2.   Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotations and citation omitted).  Claim One does not allege any facts that would invoke the Equal Protection Clause.

### 3.   Due Process

The Due Process Clause of the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property.  U.S. Const. amend. XIV, § 1.  Thus, before determining whether a plaintiff's procedural or substantive due process rights have been violated,

the court must determine whether the plaintiff has alleged deprivation of a life, liberty, or property interest.

Claim One alleges the deprivation of a property interest. However, "intentional deprivations of property do not violate the due process clause where adequate state post-deprivation remedies are available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Section 24-10-106(1)(b), C.R.S., provides an adequate post-deprivation remedy. Durre v. Dempsey, 869 F.2d 543, 547 (10th Cir. 1989). Consequently, Claim One does not state a claim for violation of the plaintiff's due process rights.

### 4.   Denial of Access to the Courts

The right of access to the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977). An inmate alleging denial of access to the courts must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." Id. at 356. Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351).

Here, the plaintiff does not allege that the temporary confiscation of his legal materials hindered his efforts to pursue a nonfrivolous claim. To the contrary, he alleges that without his legal materials, he "*would have been* unable to continue" his active cases. He admits that the materials were immediately returned to him after filing a motion for injunctive relief. *Complaint*, p. 5. The plaintiff has failed to allege a claim for denial of access to the courts.

The allegations of Claim One are insufficient to state a claim for retaliation or for violation of the plaintiff's rights to due process, equal protection, or access to the courts. I respectfully

8

RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claim One for failure to state a claim upon which relief can be granted.

## B.  Claim Two

Claim Two alleges the following:

1.   Following the confiscation of his legal papers, the plaintiff wrote a note to defendant Shane Johnson on October 20, 2002.  In the note, the plaintiff offered to "provide important information dealing with a recent murder in the facility, in exchange for resolving any problems with my legal papers, and their return."  *Complaint*, p. 6.

2.   In response to the note, Johnson wrote an incident report on October 21, 2002. Defendant Estep received the incident report.  Estep and Johnson requested the initiation of disciplinary charges against the plaintiff on October 22, 2002.  Id.

3.   On October 21, 2002, the plaintiff was called to a meeting with Johnson and defendant Samu.  They questioned him about his legal papers and promised that the papers would be returned.  Then they questioned him extensively about the information he had offered in his note to Johnson.  The plaintiff told them all of the information he knew about the events leading up to the murder.  This information included eye-witness testimony of the assault and extortion of an inmate the night before he committed the murder; DOC staff members' prior knowledge of the potential assaults, the extortion, and the murder; and DOC staff members' arrangement of certain inmates together while "anticipating the results."  Id. at pp. 6-7.

4.   Less than an hour after the meeting, the plaintiff was placed into punitive segregation without explanation.  Samu and Johnson requested the segregation.  Defendant Rusher, the Shift Commander, authorized the segregation.  Id.

9

5.   Rusher and Estep did not document in writing or otherwise review the need for pre-hearing segregation as required under the DOC's disciplinary code (the "COPD").   Id. at p. 7.

Claim Two alleges that defendants Johnson, Estep, Samu, Rusher, and the LCF Management Team violated the plaintiff's "right to be free from retaliation for redressing grievances, in violation of the First, Fifth and Fourteenth Amendments; when they punished him for attempting to resolve the issue of his legal papers by the submission of his informal grievance." Id. at p. 6.  I construe Claim Two to allege violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights.

### 1.   Retaliation and Denial of Access to the Courts

In order to state a valid claim for retaliation under section 1983, an inmate must allege that the defendants' retaliatory actions were in response to the inmate's exercise of a recognized constitutional right.  Peterson, 149 F.3d at 1144.  The plaintiff alleges that the defendants retaliated against him for writing the note, which he characterizes as an "informal grievance."  A grievance is defined by the DOC as "[a] written complaint by an offender on the offender's own behalf regarding a policy, condition, or an incident pertaining to the offender's confinement." *Administrative Regulation 850-04*, § 3D.[5]  The plaintiff's note does not address the plaintiff's confinement; it offers information in exchange for the return of his legal material.  Consequently, the plaintiff's submission of the note does not constitute an exercise of his constitutional rights,

_____

[5]I may take judicial notice of administrative regulations.  Fed. R. Evid. 201.

10

and any actions taken by the defendants in response to the note cannot be considered retaliation for exercising a constitutional right. The plaintiff has failed to state a claim for "retaliation for redressing grievances." For the same reasons, the plaintiff has failed to state a claim for violation of his First Amendment right to access the courts.

### 2. Equal Protection

Claim Two does not contain any allegations related to the Equal Protection Clause.

### 3. Due Process

Claim Two alleges a liberty interest in not being subjected to nineteen days of punitive segregation for attempting to exchange important information about a facility murder for the return of legal documents. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" Harper v. Young, 64 F.3d 563, 564 (10th Cir. 1995), aff'd, 520 U.S. 143 (1997).

Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983), overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." Sandin v. Conner, 515 U.S. 472, 480, (1995) (internal quotation and citation omitted).

State-created liberty interests are found only under limited circumstances:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [] nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

11

Sandin, 515 U.S. at 483-84.[6]

To evaluate whether a prisoner's freedom has been restrained in a manner that imposes atypical and significant hardship, the court must carefully examine the conditions of the prisoner's confinement, Gaines v. Stenseng, 292 F.3d 1222, 1225-26 (10th Cir. 2002), including the duration and degree of plaintiff's restrictions as compared to other inmates. Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 809 (10th Cir. 1999).

Claim Two alleges that the defendants violated the plaintiff's due process rights when they imposed punitive segregation on him for submitting the note. The plaintiff admits that the note was a request to trade "important information dealing with a recent murder in the facility" for return of his legal papers. He further admits that, as a result, he was subjected to punitive segregation for a term of only nineteen days. *Complaint*, p. 8, ¶¶ 4-5. I find that, as a matter of law, the imposition of nineteen days of punitive segregation against an inmate for attempting to gain favor in exchange for important information regarding a murder does not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Claim Two fails to allege the deprivation of a liberty interest and, therefore, fails to allege a violation of the plaintiff's due process rights.

_____

[6]In Sandin, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest. The prior methodology required examination of prison regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." 515 U.S. at 480-81. The Court instead returned to the due process principles that were established and applied in Meachum v. Fano, 427 U.S. 215 (1976) and Wolff v. McDonnell, 418 U.S. 539 (1974). These principles focus on the nature of the deprivation instead of the language of a particular regulation. Sandin, 515 U.S. at 481.

The allegations of Claim Two are insufficient to state a claim for retaliation or for violation of the plaintiff's rights to due process, equal protection, or access to the courts.  I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of Claim Two for failure to state a claim upon which relief can be granted.

### C.  Claim Three

Claim Three contains the following additional allegations regarding the disciplinary action taken against the plaintiff:

1.   The plaintiff was placed into punitive segregation after the completion of the investigation of the incident alleged in Claim Two.  Rusher and Estep did not document the need for pre-hearing punitive segregation as required by the COPD.  *Complaint*, p. 7.

2.   The plaintiff was served with a notice of the charges on October 30, 2002.  The notice alleged a charge of "Robbery/Extortion."  A copy of the plaintiff's note was not attached to the notice as required by the COPD.  Defendants Johnson, Estep, and Rusher issued the Notice.  Id. at pp. 7-8.

3.   The hearing was initially scheduled for November 6, 2002, but was continued to November 8, 2002.  The plaintiff was not served with notice of the continuation until November 6, 2002, at 5:10 p.m., "hours AFTER all the hearings had been concluded, in violation of the COPD."  Id. at p. 8.

4.   The hearing was held on November 8, 2002.  The hearing officer was defendant Salameno.  The plaintiff was found not guilty of the extortion charge, but was found guilty of "bartering," which was never charged.  The plaintiff was sentenced to nineteen days of punitive

13

segregation.  The maximum sanction for bartering under the COPD is fifteen days.  The plaintiff

was also penalized for twenty days of earned time.  Id.

5.   The plaintiff was not bartering; he "merely offered information to the DOC in

exchange for a restoration of [his] legal papers."  Id.

6.   The plaintiff received a "Disposition of Charges" on November 15, 2002.  Defendant

Salameno had falsely altered the plaintiff's plea to guilty.  Id.

7.   The plaintiff appealed the conviction pursuant to the COPD.  The conviction was

upheld by Estep.  Id.

8.   On December 11, 2002, the plaintiff filed a complaint in the Lincoln County District

Court pursuant to Rule 106(a)(4), Colo. R. Civ. P.  The Lincoln County District Court

overturned the conviction on October 6, 2003.  The court ordered that the conviction be

expunged and that the plaintiff's earned time, good time, job, and privileges be restored.  The

defendants did nothing.  Id. at pp. 8-9.

9.   The plaintiff filed grievances at every level of the grievance process seeking

performance of the court's order.  On October 30, 2003, he filed a "Motion for Issuance of

Contempt Citations" against the defendants for their refusal to comply with the court's order.

The court issued an order to show cause on January 20, 2004.  After the court issued the show

cause order, the defendants restored the plaintiff's job and privileges.  The defendants refused to

restore his earned time, good time, and back pay until after a contempt hearing was held on

March 15, 2004, "(but only partially)."  Id. at p. 9.

Claim Three alleges that defendants Rusher, Estep, Johnson, Samu, Salameno, and the

LCF Management Team violated the plaintiff's "right to be free from RETALIATION for

redressing grievances, in violation of the First, Fifth and Fourteenth Amendments; when they denied him due process and equal protection before, during and after their prison disciplinary actions against him." Id. at p. 7.  Claim Three further alleges the following due process violations: (1) priority in scheduling hearings was given to other inmates who were not in pre-hearing segregation ahead of the plaintiff in violation of the COPD; (2) the plaintiff was convicted "without 'some evidence', much less 'preponderance of the evidence' as required by the COPD"; and (3) the defendants did not document the need for pre-hearing punitive segregation as required by the COPD. Id. at p. 9.  I construe Claim Three to allege violations of (1)  the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights.

### 1.   Retaliation, Denial of Access to the Courts, and Equal Protection

For the reasons stated under the analysis of Claim Two, Claim Three fails to state a claim for retaliation, violation of the plaintiff's First Amendment right to access the courts, and violation of the plaintiff's equal protection rights.

### 2.   Due Process

Unlike Claim Two, which alleges a due process violation for the act of imposing a punishment, Claim Three alleges a due process violation based on alleged deficiencies in the disciplinary process itself.  The process due an inmate with regard to disciplinary proceedings is a matter of procedural due process.  Smith v. Maschner, 899 F.2d 940, 946 (10th Cir. 1990).  "[A]ctions which are protected under specific constitutional provisions should be analyzed under those provisions and not under the more generalized provisions of "substantive due process."

Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th Cir. 1990).  Therefore, I analyze Claim

Three as a violation of procedural due process, not as a violation of substantive due process.

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be

denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth

Amendment."  Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotations and

citations omitted).  The procedural protection of the Due Process Clause is triggered by the

inmate's liberty interest in his lost earned time.  Id.

Claim Three alleges that as a result of his disciplinary conviction the plaintiff lost twenty

days of earned time and that after the disciplinary conviction was overturned by the state court the

defendants only "partially" restored his earned time.[7]  *Complaint*, p. 8, ¶ 5; p. 9, ¶ 12.  However,

in his response to the defendants' Motion, the plaintiff concedes that his earned time credits have

been restored.  *Response to Motion to Dismiss from State Defendants* (the "Response"), pp. 13-

14.

When revoked earned time credits are subsequently returned to the inmate, "any due

process claim relating to the revoked earned credits is moot."  Brown v. Chandler, 111 Fed.Appx.

---

[7]I am aware that disciplinary proceedings which have resulted in sanctions that affect the
fact or length of the plaintiff's confinement--such as loss of earned time--are generally barred from
section 1983 review by Heck v. Humphrey, 512 U.S. 477 (1994).  Heck holds that "[w]hen a
state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment
in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it
would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or
sentence has already been invalidated." Id. at 487.  This "favorable termination" requirement
extends to section 1983 claims stemming from prison disciplinary hearings.  Edwards v. Balisok,
520 U.S. 641 (1997).  Here, Heck does not apply because the plaintiff has demonstrated, and the
defendants do not dispute, that the conviction has been invalidated.  Id. at p. 9, ¶ 14 (referring to
*Response to Motion to Dismiss*, filed March 31, 2005, Exhibit 7).  I take judicial notice of Exhibit
7, the Lincoln County District Court order which overturns the plaintiff's conviction.

972, 977 (10th Cir. 2004).  The plaintiff admits that his earned time credits have been restored.

Accordingly, Claim Three is moot.

Claim Three's allegations fail to state a claim for retaliation, for violation of the Equal

Protection and Due Process Clauses, or for violation of the plaintiff's First Amendment right to

access the courts.  Accordingly, I respectfully RECOMMEND that the Motion be GRANTED to

the extent it seeks dismissal of Claim Three for failure to state a claim upon which relief can be

granted.

### D.   Claim Four

Claim Four contains the following allegations regarding the conditions of confinement

encountered by the plaintiff in punitive segregation:

1.   The plaintiff never received a change of clothing, and he was forced to wear the same

jumpsuit for nineteen days.  His weekly order for library books was ignored.  He was denied

materials to brush his teeth for the first twelve days.  *Complaint*, p. 10.

2.   The plaintiff's cell was almost entirely lacking heat and ventilation.  His hands were so

cold, they were numb.  He frequently could not sleep because of shivering.  Id.

3.   The plaintiff's cell had an "intensely bright light . . . shining in the window directly in

the spot where [he] was required to lay [his] head when sleeping, resulting in further sleep

deprivation."  Id.

4.   The plaintiff was not given the full menu of food items.  After he was released from

segregation, his cell mate told him he looked gaunt and haggard.  The plaintiff lost at least twenty

pounds in segregation.  Id. at pp. 10-11.

5.   The plaintiff was denied his medically-necessary nasal spray, which prevented him from using his "bi-pap" machine on at least five nights.  This deprived him of sleep and put him at risk of death from oxygen deprivation.  Id. at p. 10.

6.   The plaintiff was denied access to his legal papers.  Id.

7.   The plaintiff sent kites, letters, and notes to Captain Johnson of the segregation unit.  Johnson never responded.  The plaintiff also told unspecified DOC staff members at least three times a day about his conditions of confinement.  They did nothing.  Id.

8.   The plaintiff filed grievances on the conditions of his confinement.  Defendants Tornowski and Estep responded to the grievances.  Id. at pp. 10-11.

9.   The severe cold, sleep deprivation, and denial of access to his medical needs aggravated his "bi-lateral neuropathy" and "unnecessarily stressed his heart (because of sleep apnea)."  Id. at p. 11.

Claim Four alleges that defendants Rusher, Estep, Johnson, Samu, Salameno, Tornowski, and the LCF Management Team violated his "right to be free from RETALIATION for redressing grievances, in violation of the First, Fifth, Eighth and Fourteenth Amendments; when they subjected him to atypical and significant hardships in punitive segregation."  Id. at p. 9.  I construe Claim Four to allege violations of (1)  the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; (4) the plaintiff's Eight Amendment right to be free from cruel and unusual punishment; and (5) the plaintiff's procedural and substantive due process rights.

**1.   Retaliation, Equal Protection, Due Process, and Denial of Access to the Courts**

Claim Four does not allege any facts to create an inference of retaliation.  Moreover, to the extent the plaintiff is asserting a claim for retaliation based on the filing of his note, the allegations of Claim Four do not state a claim for retaliation for the same reasons stated in the analysis of Claim Two.

The allegations of Claim Four do not implicate the Equal Protection Clause.

In addition, the plaintiff does not allege any actual injury from the denial of access to his legal documents during his nineteen day stay in segregation.  Therefore, the plaintiff has failed to state a claim for violation of his First Amendment rights to access the courts.

Finally, the allegations raise issues solely related to the plaintiffs' conditions of confinement and are appropriately analyzed as Eighth Amendment claims rather than due process claims.  Berry, 900 F.2d at 1493-94.

### 3.  Eighth Amendment Conditions of Confinement

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment.  Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).  To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment

violation.  Id. at 298.  To satisfy the subjective component, plaintiffs must demonstrate that the

prison official was "deliberately indifferent" to a substantial risk of serious harm.  Farmer, 511

U.S. at 834.

Here, the plaintiff claims that he repeatedly notified the Captain of the Segregation Unit,

defendant Johnson, of the conditions of his confinement, but Johnson never responded to him.

These allegations are sufficient to support an inference that Johnson was in charge of the

conditions of the plaintiff's confinement and knowingly subjected the plaintiff to substantial

deficiencies of food, clothing, shelter, and medical care.  These allegations are sufficient to state a

claim for an Eighth Amendment violation against defendant Johnson.

The plaintiff has failed to allege personal participation by the remaining defendants.  An

individual cannot be held liable in a section 1983 action unless he caused or participated in an

alleged constitutional violation.  McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983).

Respondeat superior is not within the purview of section 1983 liability.  Id.  In order for a

supervisor to be liable under section 1983, there must exist a causal connection or an affirmative

link "between the constitutional deprivation and either the supervisor's personal participation, his

exercise of control or direction, or his failure to supervise."  Butler v. City of Norman, 992 F.2d

1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976).  Without a

showing of direct responsibility for the alleged violations, liability will not be imposed on a

supervisory official.  Id.

The plaintiff makes only a conclusory statement that "all defendants who were members of

the LCF management team knew of the facts of this claim; and either directed these actions or

acquiesced in their doing."  He further attempts to hold defendants Tornowski and Estep liable

20

simply for responding to his grievances.  His conclusory accusations fall short of the factual

statements necessary to allege a cause of action against defendants Rusher, Estep, Samu,

Salameno, and Tornowski, as well as each individual on the LCF Management Team, for causing

or participating in the alleged constitutional violations.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks

dismissal of Claim Four's allegations as against all defendants regarding the plaintiff's claims for

retaliation; violation of the Equal Protection and Due Process Clauses; and violation of the First

Amendment right to access to the courts.  I further RECOMMEND that the Motion be

GRANTED insofar as it seeks dismissal of Claim Four's allegations regarding violation of the

Eighth Amendment as against defendants Rusher, Estep, Samu, Salameno, and Tornowski, and

the LCF Management Team.  I further RECOMMEND that the Motion be DENIED to the extent

it seeks dismissal of Claim Four's allegations regarding violation of the Eighth Amendment as

against defendant Johnson.

### E.  Claim Five

Claim Five alleges that between January and June 2003, the plaintiff was not permitted to

attend any Catholic services.  The defendants' stated reason was that the plaintiff did not have a

job at that time.  Inmates without jobs are regularly allowed to attend the primary services of their

faith.  Moreover, there is no requirement that an inmate declare a religious affiliation in order to

attend the primary services of that faith.  When the plaintiff filed a grievance concerning this

situation, defendants Ragland and Briggs changed his religious affiliation from Catholic to

Agnostic in the DOC computer system in order to allow the defendants to justify their behavior.

The plaintiff has never been Agnostic, and has never indicated to DOC officials that he is

Agnostic.  Defendants Briggs, Williams, and O'Brien responded to the plaintiff's grievances and "supported the continuing denial of access . . . ."  *Complaint*, pp.11-12.

Claim Five further alleges that defendants Ragland, Briggs, Williams, and O'Brien violated the plaintiff's "right to be free from RETALIATION for redressing grievances, in violation of the First, Fifth and Fourteenth Amendments; when they refused to allow Slusher, a Catholic for 51 years, to attend Catholic Mass for 6 months."  Id. at p. 11  I construe Claim Five to allege violations of (1)  the plaintiff's First Amendment right to free exercise of religion; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights.

### 1.   Retaliation

Claim Five does not contain any allegations to support an inference of retaliation.

### 2.   Equal Protection

A plaintiff need not allege that he is member of a suspect class in order to state a claim under the equal protection clause.  Schweiker v. Wilson, 450 U.S. 221, 230 (1981).  In addition, the Supreme Court has recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The plaintiff alleges that the defendants prevented him from attending Catholic services because he did not have a job, but that inmates without jobs are regularly allowed to attend the

primary services of their faith.  These allegations could arguably state a claim for violation of the Equal Protection Clause.

The allegations of the Complaint fail to assert with any specificity who prevented the plaintiff from attending Catholic services or how they prevented his attendance.  To the contrary, the Complaint alleges only that "[b]etween January of 2003 and June of 2003, [the plaintiff] was not permitted to attend any Catholic services."  Complaint, p. 11.  The allegations of Claim Five are not sufficient to hold any one defendant liable.  Although Claim Five is brought against defendants Ragland, Briggs, Williams, and O'Brien, it does not allege any facts to create an inference that any one of these defendants personally participated in preventing the plaintiff from attending Catholic services on the grounds he did not have a job.  Claim Five fails to state a claim for violation of the Equal Protection Clause against defendants Ragland, Briggs, Williams, or O'Brien.

### 3.   Due Process

Claim Five does not contain any allegations that are relevant to procedural due process. The plaintiff's claim for denial of his religious freedom is specifically protected by the First Amendment, and his claim for violation of equal protection rights is specifically protected by the Equal Protection Clause.  Therefore, I decline to analyze the claim as a violation of substantive due process.  Berry, 900 F.2d at 1493.

### 2.   First Amendment Right to Free Exercise of Religion

"The Free Exercise Clause mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs."  Hammons v. Saffle, 348 F.3d 1250, 1254 (10th Cir. 2003) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)).

23

Claim Five alleges that unspecified defendants prevented the plaintiff from attending Catholic Services because he did not have a job.  Although these allegations are sufficient to state a claim for violation of the First Amendment right to free exercise, they are not sufficient to hold any one defendant liable.

Claim Five further alleges that the defendants Ragland and Briggs changed the plaintiff's religious affiliation in the DOC computer system to Agnostic "in order to pretextually justify defendants' actions and inactions, and to allow them to justify their retaliatory denial of access to religious programs for me." *Complaint*, pp. 11-12, S3-4.  Claim Five alleges that the actions of Ragland and Briggs allowed the defendants to justify their behavior; it does not allege that Ragland and Briggs prevented the plaintiff from attending Catholic services.

Finally, Claim Five alleges that defendants Briggs, Williams, and O'Brien denied the plaintiff's grievances.  The plaintiff provides only a conclusory allegation that these defendants "maintained, along with Ragland, their deception, and supported the continuing denial of access for me." *Complaint*, p. 12.

Claim Five does not contain any facts to create an inference that Ragland, Briggs, Williams, or O'Brien personally participated in the alleged violation of the plaintiff's First Amendment right to free exercise of religion.  See p. 23, infra.  Accordingly, Claim Five fails to state a claim as against defendants Ragland, Briggs, Williams, and O'Brien for violation of the plaintiff's First Amendment right to free exercise of religion.

Claim Five does not state a claim for retaliation, for violation of the Due Process and Equal Protection Clauses, or for violation of the plaintiff's First Amendment right to free exercise

of religion. I respectfully RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claim Five for failure to state a claim upon which relief can be granted.

### F. Claim Six

Claim Six contains the following allegations:

1. The plaintiff was terminated from his sewing job on November 9, 2002, under the pretextual reason that he had been confined in punitive segregation twice in the past eight years. The plaintiff had only been confined in punitive segregation one time during his entire eight years at the Garment Factory. The plaintiff received above average work ratings throughout his tenure at the Garment Factory. *Complaint*, pp. 12-13.

2. Since losing his sewing job, the plaintiff applied for every inmate job for which he was physically qualified, including law library clerk, vocational education computer information school, the hobby shop, Toys for Tots, and a return to his position at the sewing shop. He took tests for two library jobs and received the highest grades on both tests. He interviewed for both positions and was recommended for both jobs by the supervisors. No less than sixteen positions came open at the library between November 2002 and February 2004, and he was recommended by the librarians each time. The decisions to reject the plaintiff were made by defendants Ragland and Kahanic, "who were acting under the orders and influence of the other defendants in this case." Id. at p. 13.

3. Since his termination from the sewing job, the plaintiff has continuously sought to be rehired. Rehiring of inmates is routine if they were terminated for reasons unrelated to their jobs. Many inmates who were fired after being caught stealing from the factory have been rehired after only a few months. Id.

4.    Several inmates asked defendants Reilly and Kelly when they would rehire the plaintiff. These inmates were told "when hell freezes over."  When asked why, the defendants stated that the plaintiff would never be rehired because of the grievances he had filed while employed at the Garment Factory.  Id.

5.    The plaintiff filed grievances on this matter.  Defendants Kahanic and O'Brien responded to the grievances.  Id. at pp. 13-14.

6.    "Members of the LCF Management Team discussed this situation at their meetings, and encouraged and acquiesced in the retaliatory denial of an inmate job for me; upon information and belief."  Id. at p. 14.

Claim Six alleges that defendants Reilly, Kelly, Ragland, Kahanic, O'Brien, and the LCF Management Team violated the plaintiff's "right to be free from RETALIATION for redressing grievances, in violation of the First, Fifth and Fourteenth Amendments; when they refused to grant him any of the available inmate jobs for which he was the inmate best qualified."  Id. at p. 12.  I construe Claim Six to allege violations of (1)  the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights.

### 1.  Retaliation

Claim Six alleges that defendants Reilly and Kelly stated that the plaintiff would not be rehired at the Garment Factory because of the grievances he had filed while working there.  These allegations are sufficient to state a claim for retaliation against defendants Reilly and Kelly.  The plaintiff's conclusory allegations against the remaining defendants are insufficient to state a claim for retaliation.

### 2.  Equal Protection

The Equal Protection Clause directs that all persons similarly situated shall be treated alike.  In order to assert a viable equal protection claim, plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. Campbell v. Buckley, 203 F.3d 738, 747 (10th Cir. 2000).  The plaintiff claims that "literally hundreds of inmates have been rehired back to their sewing jobs after having been terminated." This statement fails to allege sufficient facts to create an inference that the plaintiff was treated differently from inmates who were similarly situated to him, *i.e.*, were fired for having been confined in punitive segregation.  The allegations of Claim Six are insufficient to state a claim for violation of the plaintiff's equal protection rights.

### 3.  Due Process

In order to succeed on a due process claim, the plaintiff must allege the deprivation of a liberty or property interest.  "The Constitution does not create a property or liberty interest in prison employment."  Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986).  State-created liberty interests "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515

U.S. at 484.  Claim Six does not allege an atypical and significant hardship in relation to the ordinary incidents of prison life.

### 4.   Denial of Access to the Courts

Claim Six does not contain any factual allegations that implicate the plaintiff's First Amendment right to access the courts.

Claim Six does not state a claim for violation of the Equal Protection and Due Process Clauses or for violation of the plaintiff's First Amendment right to access the courts.  I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of Claim Six's allegations as to all defendants for violation of the Equal Protection and Due Process Clauses and for violation of the plaintiff's First Amendment right to access the courts.  I further RECOMMEND that the Motion be GRANTED insofar as it seeks dismissal of Claim Six's allegations regarding retaliation as against defendants Ragland, Kahanic, O'Brien, and the LCF Management Team.  I further RECOMMEND that the Motion be DENIED to the extent it seeks dismissal of Claim Six's allegations regarding retaliation as asserted against defendants Reilly and Kelly.

### G.   Claim Seven

Claim Seven alleges the following:

1.   After an order to show cause was issued to defendant Estep on January 20, 2004, the plaintiff was partially restored to his job.  Defendants Reilly and Kelly assigned the plaintiff to a job at the Garment Factory that was highly repetitious, which they knew would aggravate his medical condition of neuropathy.  *Complaint*, p. 14.

2. On March 15, 2004, the Lincoln County District Court ordered the defendants to pay the plaintiff sixteen months back-pay; award him nineteen days of additional earned time; fully restore him to his original job; and restore all of his privileges. When the defendants failed to comply with the court's order, the plaintiff filed grievances seeking compliance. The plaintiff also filed a grievance against the Garment Factory stating that fully-armed high security inmates were being left unsupervised for several hours each day. Id. at pp. 14-15.

3. In retaliation for these grievances, the plaintiff was again terminated from his job on June 18, 2004. The defendants' reasons for firing the plaintiff is that he failed to show up for work on that morning. The plaintiff did not show up to work because he had an 8:00 a.m. appointment in the law library; a 9:00 a.m. appointment for a "production of documents" meeting in case No. 01-F-2299; and he had been ordered to remain in his living unit by Lt. Strode, the unit supervisor. Id. at p. 15.

4. "Upon information and belief," several other inmates who also had scheduled appointments at the law library that morning were not sanctioned for attempting to attend the 8:00 a.m. law library session. Id.

5. As a direct result of this job termination, the plaintiff was placed on "unassigned" status, which prevented him from attending the law library except on Monday, Wednesday, and Friday afternoons. However, the law library is closed on Mondays and Fridays, and afternoon appointments are limited to half the length of morning appointments. Therefore, the plaintiff was limited to 1 ½ hours per week during the latter half of June and the month of July. Id.

6. The plaintiff must type his legal pleadings due to a medical condition. Consequently, he is totally dependant on the law library's typewriter. Id.

29

7.   When the plaintiff was placed on unassigned status, he immediately notified the law librarian and his unit captain, defendant Johnson.  He also wrote letters to Warden Estep, informing him of this dilemma.  The law librarian informed all members of the LCF Management Team.  Id.

8.   The plaintiff's opening brief was due in the United States Supreme Court on July 26, 2004.  He had already been granted a sixty day extension of time to compensate for numerous lockdowns.  Two weeks after the law library restrictions were imposed on him, he requested another extension of time from the Court.  His request was denied, "effectively ending my access to that Court."  Id. at pp. 15-16.

9.   The grievances in this claim were responded to by defendants Kahanic and O'Brien, "who merely acquiesced and excused defendants' actions."  Id. at p. 16.

Claim Seven alleges that defendants Reilly, Kelly, Estep, Johnson, Kahanic, and O'Brien violated the plaintiff's "right to be free from RETALIATION for redressing grievances, in violation of the First, Fifth and Fourteenth Amendments; when they took away his inmate job and denied him equal access to the facility law library; which caused Slusher to be denied review of his federal habeus [sic] corpus appeal."  Id. at p. 14.  I construe Claim Seven to allege violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights.

### 1.  Rooker-Feldman Doctrine

The defendants assert that the plaintiff has raised the allegations of Claim Seven in state court and, therefore, Claim Seven is barred by the Rooker-Feldman Doctrine.  The Rooker-Feldman doctrine is derived from 28 U.S.C. § 1257 which provides that federal review of state court judgments can be obtained only in the United States Supreme Court.  Guttman v. Khalsa, 446 F.3d 1027, 1031 (10th Cir. 2006).

The defendants, relying on Kenmen Engineering v. City of Union, 314 F.3d 468 (10th Cir. 2002), assert that although the plaintiff is currently appealing his state court ruling to the Colorado Court of Appeals, Claim Five is still barred because the Rooker-Feldman doctrine applies to all decisions of the state court, whether final or not.  To the contrary, in Exxon Mobil, Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005), the Supreme Court held that the Rooker-Feldman doctrine applies only to cases filed after the state proceedings are final.  Exxon Mobil reversed the rule in Kenmen.  Guttman, 446 F.3d at 1031.  Because the plaintiff is still litigating this claim in the state court, the Rooker-Feldman doctrine does not bar Claim Seven in this Court.

### 2.  Retaliation

Claim Seven alleges that on March 15, 2004, the Lincoln County District Court ordered the defendants to pay the plaintiff back-pay and to restore his job, earned time, and all privileges.  Claim Seven further alleges that when the defendants failed to comply with the order, the plaintiff filed grievances seeking compliance, and he was terminated from his job on June 18, 2004 "[i]n retaliation for filing all these grievances."  *Complaint*, pp. 14-15.

Claim Seven alleges suspicious timing between the plaintiff's filing of grievances and the termination from his job. These allegations arguably suffice to allege a cause of action for retaliation. However, the allegations are insufficient to hold any one defendant liable for retaliation. Although Claim Seven is brought against defendants Reilly, Kelly, Estep, Johnson, Kahanic, and O'Brien, it does not allege that any of these defendants personally participated in terminating him from his job on June 18, 2004. Rather, the claim contains only the conclusory allegation that "[i]n retaliation for all these grievances, [the plaintiff] was once again terminated from his inmate job. . . ." Complaint, p. 15. Claim Seven therefore fails to state a claim for retaliation against defendants Reilly, Kelly, Estep, Johnson, Kahanic, and O'Brien.

### 3.  Denial of Access to the Courts

Claim Seven alleges that the plaintiff was terminated from his job on June 18, 2004; that his termination resulted in limited access to the law library; and that his limited access to the law library resulted in the Supreme Court's dismissal of his habeas petition. These allegations are sufficient to state a claim for violation of the First Amendment right to access the courts.

As with the allegations regarding retaliation, Claim Seven's allegations are insufficient to hold any one defendant liable for denial of the plaintiff's access to the courts. Claim Seven alleges defendants Johnson, Estep, and the members of the LCF Management Team were notified of his limited access to the law library, and that defendants Kahanic and O'Brien responded to the plaintiff's grievances regarding the defendants' failure to comply with the order of the Lincoln County District Court. However, Claim Seven does not allege any facts to create an inference that any of these defendants actually caused or participated in the denial of plaintiff's access to the

law library.  Claim Seven fails to state a claim for denial of access to the courts as against

defendants Reilly, Kelly, Estep, Johnson, Kahanic, and O'Brien.

### 4.  Equal Protection

Claim Seven alleges that "[s]everal other inmates who also had scheduled appointments at

the law library that morning were not sanctioned for attempting to attend the 8 a.m. session, upon

information and belief."  *Complaint*, p. 15.  Claim Seven does not allege any facts from which an

inference can be drawn that the other inmates were similarly situated to the plaintiff, *i.e.* that they

worked in the Garment Factory; that they also had 9:00 a.m. appointments; and that they had

been ordered to remain in their living units by their unit supervisors.

### 5.  Due Process

Claim Seven does not contain any allegations relevant to procedural due process.

The plaintiff's claim for retaliation for filing grievances and his claim for denial of access

to the courts are protected under specific constitutional provisions, as addressed above.  I

conclude that, because these alternate constitutional provisions serve as "the primary source of

substantive protection" for the plaintiff's claims, the claims should be analyzed under those

provisions and not under substantive due process.  Berry, 900 F.2d at 1493.

I respectfully RECOMMEND that the Motion be DENIED insofar as it seeks dismissal of

Claim Seven under the Rooker-Feldman doctrine and GRANTED to the extent it seeks dismissal

of Claim Seven for failure to state a claim upon which relief can be granted.

### H.  State Constitutional Claims

The plaintiff asserts that his claims are brought under the Colorado Constitution "to the

extent each of these claims does NOT fit under the federal constitution."  *Response to Motion to*

*Dismiss From State Defendants*, p. 22; *Complaint*, p. 3.  The Tenth Circuit Court of Appeals has

recognized that state constitutional claims are precluded where another adequate remedy exists:

> In <u>Bd. of County Comm'rs v. Sundheim</u>, 926 P.2d 545
> (Colo.1996) (en banc), the Colorado Supreme Court held that
> "[w]hile it may be appropriate to recognize an implied state
> constitutional cause of action when there is no other adequate
> remedy ··· where other adequate remedies exist, no implied remedy
> is necessary." Id. at 553.  Section 1983 provides such an adequate
> remedy.

<u>Arndt v. Koby</u>, 309 F.3d 1247, 1255 (10th Cir. 2002).  The fact that a plaintiff does not prevail on

a section 1983 claim "does not make it any less 'available' as a legal remedy under <u>Sundheim</u>."

<u>Id.</u>

Here, the plaintiff has an adequate remedy under section 1983 for all of his claims.

Therefore, to the extent he attempts to assert any claims under the Colorado Constitution, such

claims are precluded.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks

dismissal of the plaintiff's state constitutional claims.

## I.   Failure to Allege Physical Injury

The defendants move to dismiss the plaintiff's request for compensatory damages because

the plaintiff has failed to allege any physical injury as required by the Prison Litigation Reform Act

("PLRA").  The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a
> jail, prison, or other correctional facility, for mental or emotional
> injury suffered while in custody without a prior showing of physical
> injury.

42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

My review of the Complaint reveals that the plaintiff has alleged physical injury only in relation to Claim Four. Specifically, the plaintiff alleges that the conditions of his confinement in punitive segregation resulted in aggravation of his "bi-lateral neuropathy" and stress to his heart.[8] Complaint, p. 11, ¶ 5. Therefore, any compensatory damages sought in relation to Claim Four are not barred by the PLRA. Claims One, Two, Three, Five, Six, and Seven do not allege physical injury. Any compensatory damages sought in relation to these claims are barred.

Although section 1997e(e) bars recovery of compensatory damages for failure to allege physical injury, it does not bar recovery of nominal and punitive damages or declaratory and injunctive relief. Id., at 881; Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

The defendants assert that the plaintiff's requests for declaratory and injunctive relief against LCF officials are moot because the plaintiff is no longer incarcerated at LCF. Where entry of declaratory or injunctive relief in the plaintiff's favor would have no effect on the defendants' behavior toward the plaintiff, the plaintiff's requests for declaratory and injunctive relief must be denied. Green v. Branson, 108 F.3d 1296, 1300 (10th Cir. 1997) (citing Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985), which held that a prisoner's claims for injunctive and declaratory

---

[8]I note that Claim Seven alleges that the defendants rehired him at the Garment Factory and gave him a job that they "knew would aggravate [his] medical condition of neuropathy." Complaint, p. 14, ¶ 1. However, Claim Seven does not allege that the job actually aggravated his condition.

relief concerning prison conditions were moot because the prisoner had been moved to another prison unit).

The plaintiff requests that the Court declare the defendants' behavior unconstitutional; direct the defendants to adopt policies to ensure that such behavior does not occur again; restrain the defendants from retaliating against the plaintiff in the future; "retain jurisdiction over this action until all remedial orders have been fully implemented" and the Court is satisfied that the actions will not reoccur; and "if less intrusive actions fail to correct or abate the violations and retaliations from continuing, Plaintiff seeks an order for his immediate release from custody . . . ." *Complaint*, pp. 18-19. These orders would have no affect on the defendants' behavior toward the plaintiff because the plaintiff is no longer in the custody of the defendants. Consequently, the plaintiff's requests for declaratory and injunctive relief must be dismissed.

The defendants also state that the plaintiff's allegations do not "state a viable punitive damages claim" against any of the defendants. *Motion*, p. 14. "Punitive damages are available only for conduct which is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others." Searles, 251 F.3d at 879 (citation and internal quotations omitted). The allegations of the plaintiff's remaining claims are sufficient to allege reckless and callous indifference to the constitutional rights of the plaintiff.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of any compensatory damages sought in relation to Claims One, Two, Three, Five, Six, and Seven. I further RECOMMEND that the Motion be DENIED to the extent its seeks dismissal of any compensatory damages sought in relation to Claim Four.

36

I further RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of the plaintiff's requests for declaratory and injunctive relief.

I further RECOMMEND that the Motion be DENIED to the extent it seeks dismissal of the plaintiff's requests for nominal damages.

I further RECOMMEND that the Motion be DENIED to the extent its seeks dismissal of the plaintiff's request for punitive damages under the remaining claims.

## IV.  CONCLUSION

I respectfully RECOMMEND that the defendants' Motion be GRANTED IN PART and DENIED IN PART as follows:

1.  GRANTED insofar as it seeks dismissal of Claim One for failure to state a claim upon which relief can be granted;

2.  GRANTED to the extent it seeks dismissal of Claim Two for failure to state a claim upon which relief can be granted;

3.  GRANTED to the extent it seeks dismissal of Claim Three for failure to state a claim upon which relief can be granted;

4.  GRANTED to the extent it seeks dismissal of Claim Four's allegations as against all defendants regarding the plaintiff's claims for retaliation, violation of the Equal Protection and Due Process Clauses, and violation of the First Amendment right to access to the courts;

5.  GRANTED to the extent it seeks dismissal of Claim Four's allegations regarding violation of the Eighth Amendment as against defendants Rusher, Estep, Samu, Salameno, and Tornowski, and the LCF Management Team;

6.   DENIED to the extent it seeks dismissal of Claim Four's allegations regarding violation of the Eighth Amendment as against defendant Johnson;

7.   GRANTED insofar as it seeks dismissal of Claim Five for failure to state a claim upon which relief can be granted;

8.   GRANTED to the extent it seeks dismissal of Claim Six's allegations as to all defendants for violation of the Equal Protection and Due Process Clauses and for violation of the plaintiff's First Amendment right to access the courts;

9.   GRANTED insofar as it seeks dismissal of Claim Six's allegations regarding retaliation as against defendants Ragland, Hahanic, O'Brien, and the LCF Management Team;

10.   DENIED to the extent it seeks dismissal of Claim Six's allegations regarding retaliation as asserted against defendants Reilly and Kelly;

11.   DENIED insofar as it seeks dismissal of Claim Seven under the Rooker-Feldman doctrine;

12.   GRANTED to the extent it seeks dismissal of Claim Seven for failure to state a claim upon which relief can be granted;

13.   GRANTED to the extent it seeks dismissal of the plaintiff's state constitutional claims;

14.   GRANTED to the extent it seeks dismissal of any compensatory damages sought in relation to Claims One, Two, Three, Five, Six, and Seven;

15.   DENIED to the extent its seeks dismissal of any compensatory damages sought in relation to Claim Four;

16.   GRANTED to the extent it seeks dismissal of the plaintiff's requests for declaratory and injunctive relief;

17.   DENIED to the extent its seeks dismissal of the plaintiff's requests for nominal damages; and

18.   DENIED insofar as it seeks dismissal of the plaintiff's request for punitive damages on his remaining claims.[9]

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

---

[9]Pursuant to this Recommendation, the following claims would survive dismissal:

1.   Claim Four insofar as it seeks nominal, compensatory, and punitive damages against defendant Johnson for violation of the plaintiff's rights under the Eighth Amendment; and

2.   Claim Six insofar as it seeks nominal and punitive damages against defendants Reilly and Kelly for retaliation.

Dated August 11, 2006.

                                        BY THE COURT:

                                         s/ Boyd N. Boland
                                        United States Magistrate Judge