IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-02187-PSF-BNB

F. DAVID SLUSHER,

Plaintiff,

v.

ENDRE SAMU;
CORI SALAMENO;
AL ESTEP;
BILL RUSHER;
SHANE JOHNSON;
DELAYNE TORNOWSKI;
JIM DAY;
RICHARD E. HOWARD;
TREVOR WILLIAMS;
BOB KAHANIC;
TOM O'BRIEN;
ANTHONY A. DECESARO;
JOHN REILLY;
MIKE KELLY;
BUTCH RAGLAND; and
JERRY BRIGGS,

Defendants.

---

## ORDER ON MAGISTRATE JUDGE'S RECOMMENDATION OF AUGUST 11, 2006

---

This matter comes before the Court on the Recommendation of the Magistrate

Judge entered August 11, 2006 (Dkt. # 101), in which he recommended that

Defendants' Motion to Dismiss Plaintiff's Revised Complaint (Dkt. # 76) be granted in

part and denied in part. After receiving an extension of time, Plaintiff Slusher timely

filed his Objections to the Recommendation on September 20, 2006 (Dkt. # 107).

Defendants timely filed a response to the plaintiff's Objections on October 17, 2006 (Dkt. # 112). The matter is ripe for determination.

**BACKGROUND**

As explained in the Recommendation of the Magistrate Judge, plaintiff was directed to file the Revised Complaint after the Magistrate Judge found his original complaint to be "prolix and confusing." (Recommendation at 3). Plaintiff attempted to comply with the direction and filed the Revised Complaint on August 11, 2005 (Dkt. # 67). As correctly described by the Magistrate Judge, the Revised Complaint names 16 defendants, asserts seven claims, and alleges essentially that plaintiff was retaliated against in various ways for his filing of lawsuits challenging conditions of his confinement at the Limon Correctional Facility in Limon, Colorado.

On August 23, 2005, Defendant DeCesaro moved for summary judgment (Dkt. # 70) and was dismissed from the case by order of this Court entered February 28, 2006 (Dkt. # 97). On September 2, 2005, 14 of the other 15 defendants, all alleged to be employees or former employees of the Limon facility, filed their motion to dismiss the Revised Complaint(Dkt. # 76), collectively seeking to dismiss all seven of plaintiff's claims as against them. Although not noted by the Magistrate Judge, it appears that Defendant Jerry Briggs was not included among the defendants filing the motion to dismiss, nor has he filed any response to either the original complaint or the Revised Prisoner Complaint, despite having been served with the original complaint according

2

to a return executed by plaintiff and filed with the Court on January 14, 2005 (Dkt. # 20).[1]

**PLAINTIFF'S CLAIMS**

The Recommendation of the Magistrate Judge correctly notes that the seven claims contain "multiple sub-claims," and explains that only some of the fifteen remaining named defendants are referenced in each claim (Recommendation at 3). In his thorough, 40-page analysis of the motion to dismiss, the Magistrate Judge categorized the subclaims that he determined plaintiff was seeking to allege within each of the seven numbered claims.  Thus, he finds that:

Claim One alleges "violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights."  (Recommendation at 5);

Claim Two alleges "violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights."  (*Id.* at 10);

Claim Three alleges "violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his

---

[1]   The Revised Complaint alleges that Defendant Briggs was a "contract employee" of the Colorado Department of Corrections working as a "chaplain" at the Limon Facility (Complaint at ¶ 6).

3

constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights."  (*Id.* at 15);

Claim Four alleges violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; (4) the plaintiff's Eight Amendment right to be free from cruel and unusual punishment; and (5) the plaintiff's procedural and substantive due process rights."  (*Id.* at 18);

Claim Five alleges "violations of (1) the plaintiff's First Amendment right to free exercise of religion; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights."  (*Id.* at 22);

Claim Six alleges "violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights."  (*Id.* at 26); and

Claim Seven alleges "violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights."  (*Id.* at 30).

**THE RECOMMENDATION OF THE MAGISTRATE JUDGE**

The Recommendation methodically addresses each of the multiple subclaims under each of the seven enumerated claims in order to determine whether the claim is

subject to dismissal.  The Magistrate Judge concluded that all subclaims under Claims One, Two, Three, Five and Seven should be dismissed for failure to state a claim for relief; that all subclaims under Claim Four be dismissed for failure to state a claim for relief, with the exception of the Eight Amendment subclaim as against Defendant Johnson, only; that all subclaims under Claim Six should be dismissed for failure to state a claim for relief, with the exception of the subclaim alleging retaliation against Defendants Reilly and Kelly, only; and that all sub-claims under Claim Seven should be dismissed for failure to state a claim for relief, but not on the grounds of the *Rooker-Feldman* doctrine (Recommendation at 37-38).

In addition, the Magistrate Judge recommends dismissal of any claims construed to be state constitutional claims, as opposed to federal constitutional claims; dismissal of claims for compensatory damages sought under Claims One, Two, Three, Five, Six and Seven as there is no allegation of physical injury contained in those claims as required under 42 U.S.C. § 1997e(e), but retention of the claim for compensatory damages pled in Claim Four as physical injury is alleged (*id.* at 34-36).

The Magistrate Judge also recommends dismissal of plaintiff's claims for declaratory and injunctive relief as moot because plaintiff has been transferred out of the Limon facility and therefore the requested relief would have no effect on the defendants' behavior towards plaintiff (*id.* at 35-36).  Finally, as to the subclaims for relief which are not recommended for dismissal, the Magistrate Judge recommends that the plaintiffs' claims for nominal and punitive damages not be dismissed (*id.* at 35-37).

**PLAINTIFF'S OBJECTIONS**

Plaintiff's Objections filed on September 20, 2006 (Dkt. # 107) complain about the Magistrate Judge's compartmentalization of his Revised Complaint to the extent the Magistrate Judge did not consider fact allegations pled under one of the enumerated claims as being incorporated under the other enumerated claims, and therefore challenges the finding of an absence of allegations to support some of the later pled claims (Objection at 1-3).  Nonetheless, the plaintiff's Objections follow the organization contained in the Recommendation of the Magistrate Judge and does not appear to object to the categorization of his seven claims into the multiple subclaim s described above.

In his Objections, plaintiff specifies by enumerated claims the recommendations of the Magistrate Judge to which he objects.  While he has made objection to the recommended dismissal of each of his seven claims, it does not appear that his Objections address the recommended dismissal of some of the subclaims under each of the enumerated claims as set forth by the Magistrate Judge.  For example, with respect to his Claim One, he expressly objects to dismissal of the retaliation subclaim contained therein (*see* Objections at 3-4), but he does not tender objections to the dismissal of the other subclaims identified by the Magistrate Judge, namely the equal protection, due process and First Amendment claims.  Similarly, with respect to Claim Two, he expressly objects to dismissal of the subclaims denominated retaliation, First Amendment access to the courts and due process (*id.* at 5-7), but he does not tender

6

an objection to the recommended dismissal of the equal protection subclaim identified by the Magistrate Judge.

Pursuant to Rule 72(b), F.R.Civ.P., and 28 U.S.C. § 636(b), when objection is made to a Magistrate Judge's recommendation on a dispositive motion such as a motion to dismiss, the district court shall make a *de novo* determination upon the record, or after additional evidence, "of such portions of the magistrate judge's disposition to which specific written objection has been made." *Id.* Here, as noted, because plaintiff's Objections only take issue with certain portions of the Magistrate Judge's ruling, the Court below confines its *de novo* review to the subclaims within each enumerated claim as to which plaintiff makes an objection to the dismissal recommendation.

**ANALYSIS**

**Claim One**

Plaintiff's Claim One essentially alleges that Defendants Tornowski, Howard, Johnson and the LCF Management Team (which is not defined in plaintiff's Revised Complaint) violated his right to be free from retaliation for filing grievances over prison treatment in violation of his First, Fifth and Fourteenth Amendment rights when they took his active legal files and threatened to destroy them (Revised Complaint at 5).

As noted above, with respect to Claim One the plaintiff filed an objection only as to the Magistrate Judge's recommendation regarding the retaliation subclaim found by the Magistrate Judge. The Magistrate Judge recommends dismissal of this subclaim because plaintiff has not alleged any specific facts to demonstrate that the actions

7

taken by Defendants Tornowski and Howard in removing his legal papers during a facility-wide shakedown would not have been taken "but for" a retaliatory motive as required under *Peterson v. Shanks,* 149 F.3d 1140, 1144 (10th Cir. 1998) (Recommendation at 6-7).  Specifically, the Magistrate Judge finds that the removal of the legal papers on October 19, 2002, more than ten months after plaintiff filed a civil suit against prison authorities, is too tenuous a "temporal proximity" to establish by itself a relationship that would provide evidence of an inference of retaliation, and that plaintiff has not alleged any other facts to support the relationship that would lead to a conclusion of retaliation (*id.* at 6-7).

The Court has reviewed the allegations contained in Claim One of the Revised Complaint at 5-6, and agrees with the Magistrate Judge that there are no factual allegations to support the conclusory allegation of the claim that Defendants Tornowski and Howard took plaintiff's legal papers in retaliation for his filing grievances, or that Defendant Johnson or the unnamed members of the LCF Management team had any personal involvement in the seizure.  As stated in *Peterson, supra*, a "plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place. . . .  An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  (Internal quotations and citations omitted; emphasis in original) 149 F.3d at 1144.

In his Objections plaintiff asserts that an affidavit of his cellmate Michael Ingram, attached as an exhibit to a previously filed response to a motion to dismiss (Dkt. # 63),

8

supports plaintiff's allegations of a "conspiracy" between Defendants Tornowski and Howard, although he does not assert that the affidavit provides evidence of retaliatory motive (Objections at 3).  The Court has reviewed the Ingram affidavit, and while it does provide useful information as to the background of the search of their cell on October 19, 2002, including the fact that it was precipitated by a murder in the prison and a subsequent "facility-wide lockdown," and suggests that some of Ingram's legal papers were removed from the cell while other papers were not removed, nothing in the Ingram  affidavit suggests a retaliatory motive on the part of the named defendants, nor does it even identify which prison officers removed the papers.

In an effort to respond to the lack of temporal proximity between the search of plaintiff's cell and the filing of the prior lawsuit as referenced by the Magistrate Judge, plaintiff contends that "it is highly likely" that the defendants "had only recently become aware of this fact [the filing of the lawsuit]" in the month previous to the search of the cell, because of the length of time required to make service (Objections at 4).  But plaintiff offers no proof of this possibility nor were such facts alleged in the complaint. Moreover, as plaintiff urges, the Court has reviewed the records of service in the prior case that was filed in this Court, Civil Action No. 01-F-2299, and finds that the record reflects that an acceptance of service on behalf of Defendants Tornowski and Howard was made in that case on March 4, 2002 (Dkt. # 18 in Civil Action No. 01-F-2299), some seven and one-half months before the search and not the "previous month" as plaintiff suggests.

Finally, plaintiff asserts in his Objection that he "overheard defendants' anger at [him] because of [his] lawsuit against them IMMEDIATELY preceding the confiscation" (Objections at 4), but he has not alleged such facts in the complaint, nor does any alleged expression of anger, including that alluded to in paragraph 8 of the Ingram Affidavit, reflect any link to the lawsuit filed by plaintiff.

Accordingly, the Court accepts the recommendation of the Magistrate Judge as to Claim One and agrees that the claim must be dismissed for failure to state a claim for relief for retaliation, or for any violation of the First, Fifth or Fourteenth Amendments.

### Claim Two

Plaintiff's Claim Two alleges that Defendants Johnson, Estep, Samu, Rusher and the LCF Management Team (still undefined) violated his right to be free from retaliation for redressing grievance in violation of his First, Fifth and Fourteenth Amendment rights when they punished him for "attempting to resolve the issue of his legal papers." (Revised Complaint at 6).  The complaint further explains the situation however, as it alleges that following the confiscation of his papers, plaintiff sent a note to his unit captain, Defendant Johnson, offering to provide "important information" regarding the recent murder "in exchange for resolving any problems" with his legal papers (*id.*).  Plaintiff alleges when he was told he would get the papers promptly, he provided "all of the information [he] had offered" in his note to Johnson, and afterwards was placed in punitive segregation without explanation and without adequate documentation or review (*id.* at 6-7).

The Magistrate Judge found that Claim Two tries to assert violations of the plaintiff's First Amendment right to access the courts, his right to be free from retaliation for exercising his constitutional right to access the courts, his equal protection rights, and procedural and substantive due process rights.  The Magistrate Judge, however, recommends dismissal of the entire Claim Two for failure to state a claim for relief. As noted above, plaintiff's Objections to the Recommendation only raise express objections regarding the subclaims for retaliation, denial of access to the courts, and denial of due process (Objections at 5-7).

The Magistrate Judge recommends dismissal of plaintiff's subclaims sounding in retaliation and denial of access to the courts because he found that the submission of the note offering to barter information in exchange for return of the legal papers is not a grievance over the conditions of confinement, and thus not an exercise of plaintiff's constitutional rights (Recommendation at 10-11).  The Magistrate Judge also found that plaintiff's confinement in punitive segregation lasted 14 days and that under the decisions in *Sandin v. Conner*, 515 U.S. 472 (1995) and *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) such restraint on plaintiff's freedom given his barter offer, did not impose the "atypical and significant hardship" necessary to make out a due process violation (*id.* at 11-12).

The Magistrate Judge found that plaintiff's sending of the note to Captain Johnson did not fall within the Department of Corrections definition of a "grievance" or even an "informal grievance" as those terms are defined in the prison regulations, hence the note did not constitute a "redress of grievance."  (Recommendation at

11

10-11).  Plaintiff argues in his Objections that prison regulations defined "informal

grievance" in such a way that his note would come within the definition (Objections

at 5).  Yet defendants show in their response that the definition on which plaintiff relies

was outdated by 2002 when this incident occurred (Defendants' Response at 6-7).

This Court need not resolve the dispute about which definition of "informal

grievance" was in effect at the time in order to rule on the motion.  As noted in

*Peterson, supra*, the inmate has a right to be free from retaliation taken by prison

officials in response to the exercise of the prisoner's constitutional rights.  But that case

also holds that "it is not the role of the federal judiciary to scrutinize and interfere with

the daily operations of a state prison, and our retaliation jurisprudence does not

change this role.  Obviously, an inmate is not inoculated from the normal conditions of

confinement experienced by convicted felons serving time in prison merely because he

has engaged in protected activity."  149 F.3d at 1144.  Here, where plaintiff in his

second claim that he offered to "barter" information about a murder in exchange for

favorable treatment for the return of legal papers, this Court can not find that he was

exercising his "constitutional right" to redress a grievance, however that term may be

defined, nor was the prison's response outside the normal operations of a prison.

Accordingly, the Court agrees with the Magistrate Judge that the plaintiff's Claim

Two fails to state a claim for retaliation or denial of access.

The Court, however, does not agree with the Magistrate Judge that plaintiff's

claimed due process rights violations based on the imposition of a 19-day punitive

segregation in connection with this event can be dismissed at this stage of the case.

As the Magistrate Judge correctly stated, in *Sandin v. Conner, supra*, the Supreme Court held that violation of the inmate's due process rights do not arise in the absence of the imposition of "atypical and significant hardship" in relation to the ordinary incidents of prison life.  515 U.S. at 484.  Plaintiff's Objections argue, however, that application of such a result requires the Court to "carefully examine the conditions of the prisoner's confinement" in making such a determination, citing to *Gaines v. Stenseng*, 292 F.3d at 1225-26, and argues that the Magistrate Judge made no such careful examination here (Objections at 6-7).

In *Gaines*, the Tenth Circuit reversed the district court's dismissal of a prisoner claim brought *in forma pauperis* under 28 U.S.C. § 1915(e)(2), finding that the district court acted "precipitately" when it conclude that a 75-day disciplinary segregation failed to state a claim for relief without first considering whether such segregation "mirrors conditions imposed upon inmates in administrative segregation and protective custody."  292 F.3d at 1226.

Here, the Magistrate Judge did examine the conditions of plaintiff's confine-ment in punitive segregation, albeit not in connection with his discussion of Claim Two. In discussing plaintiff's Claim Four, to the extent it alleges violation of the Eight Amendment by imposing cruel and unusual condition of confinement, the Magistrate Judge found that plaintiff's allegations "are sufficient to support an inference that [Defendant] Johnson was in charge of the conditions of the plaintiff's confinement and knowingly subjected the plaintiff to substantial deficiencies of food, clothing, shelter, and medical care" and that such allegations are sufficient to state an arguable

claim for violation of the Eighth Amendment (Recommendation at 20-21).  If the alleged conditions of confinement support a claim that the prison officials may have failed to provide humane conditions of confinement, the allegations may also support a denial of due process under *Sandin* as "atypical and significant" hardships.  As the Circuit panel stated in *Gaines, supra*, "[a]lthough the court might properly conclude at the summary judgment stage that there is sufficient evidence to establish that such segregation mirrors conditions imposed upon inmates in administrative segregation and protective custody, and that therefore the complaint should be dismissed," summary dismissal at that pleading stage without the benefit of some evidence of the confinement conditions was premature.

Defendants' motion is thus granted as to Claim Two to the extent it alleges claims for retaliation and denial of access to redress grievances, but denied to the extent it alleges a denial of due process by Defendants Johnson, Estep, Samu and Rusher arising from the plaintiff's punitive segregation.  As plaintiff does not object to the Recommendation to the extent it recommends dismissal of his equal protection claim, that claim is also dismissed.

**Claim Three**

Plaintiff's Claim Three alleges a variety of procedural irregularities in connection with plaintiff's assignment to punitive segregation in October 2002, claiming, as noted above, retaliation, denial of access and violations of equal protection and due process. The Magistrate Judge found that plaintiff's subclaims for retaliation and denial of access in the third claim were subject to dismissal for the same reasons that those

14

subclaims were subject to dismissal under the second claim.  The Court agrees and those claims are dismissed.  In his Objections, the plaintiff does not object to the Recommendation to dismiss the equal protection claim and that claim too is dismissed.

The procedural irregularities alleged in the third claim relate to the manner in which plaintiff was placed into and retained in punitive segregation and the impact that the segregation had on his prison job and privileges, good time and earned time credits (Revised Complaint at 7-9).  However, the procedural irregularities alleged need not be detailed here, for as the Magistrate Judge correctly found, plaintiff's claims in regard to these alleged irregularities are moot.  As plaintiff himself alleged and admits, after he brought a proceeding Judge Stan Brinkley in Lincoln County District Court, his good time, earned time credits and back pay were restored (Revised Complaint at 9).  Citing to *Brown v. Chandler,* 111 Fed. Appx. 972, 977 (10th Cir., Oct. 6, 2004), the Magistrate Judge correctly found that the restoration of earned time credits moots a claim for deprivation of due process.  In his Objections, plaintiff himself agrees that the Magistrate Judge was correct in this regard, but states that the Magistrate Judge failed to consider the atypical and significant hardships he suffered while in punitive segregation, as alleged in Claim Four (Objections at 7).  Plaintiff's claims in this regard are addressed under his Claim Four, and therefore his all of plaintiff's claims and subclaims contained in his third claim are dismissed.

**Claim Four**

Plaintiff's fourth claim essentially alleges, as the Magistrate Judge found, that the conditions of confinement while he was in punitive segregation amount to cruel and

unusual punishment in violation of the Eighth Amendment.  The Magistrate Judge's Recommendation summarized the ten separate paragraphs of plaintiff's complaint alleging harsh conditions (*see* Revised Complaint at 10; Recommendation at 17-18). The Magistrate Judge concluded that the complaint alleges conditions  sufficiently serious to satisfy the objective component of an Eighth Amendment violation, and also sufficient facts, if proven, to demonstrate that one named official, Defendant Johnson, was deliberately indifferent to the risk of serious harm to plaintiff (Recommendation at 19-20).  The Magistrate Judge concluded, however, that the allegations of the conditions of the confinement did not support claims for retaliation, denial of legal access or equal protection (*id.* at 18-19).

Plaintiff's Objections urge that the retaliation and denial of access subclaims should not be dismissed for the same reasons that his subclaims for retaliation and denial of access under Claim Two should not be dismissed (Objections at 8-9), but this Court disagrees.  For the same reasons as noted above, plaintiff's being placed into punitive segregation for seeking to "barter" information about a murder with the prison officials is not a matter involving the redress of prison grievances.  Thus neither a denial of access nor a retaliation claim may arise from such circumstances.

Plaintiff also urges that his equal protection subclaim should not be dismissed because other inmates placed in segregation were not subject to the same hardships (Objections at 9-10).  Plaintiff, however, does not allege that the purported differential treatment by the prison administrators was for a discriminatory purpose, thus he has

not stated an equal protection claim. *See e.g. Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003).

Plaintiff also objects to the Recommendation to the extent that it would dismiss this claim as against all defendants other than Defendant Johnson (Objections at 9-10). The Magistrate Judge found that the allegations did not allege personal participation by other defendants, but made only conclusory allegations that other unnamed defendants, described only as members of the LCF management team, "knew" about the facts of the claim (Recommendation at 20-21).  In his Objections, plaintiff now asserts that "from many conversations with various officers at at [sic] LCF, including Captain Johnson, the LCF Management Team (each and every individual) had DIRECT knowledge of the conditions of confinement to which I was being subjected, at the time it was done." (Objections at 9-10).  Despite his assertion, plaintiff did not so plead in his Revised Complaint.  But even if he had done so, this Court would find the allegation insufficient to allege liability on the part of the other defendants.  Not one of the other defendants is named by plaintiff as someone he spoke to and no basis is given for finding personal involvement or knowledge amounting to deliberate indifference on the part of any defendant other than Captain Johnson.

Accordingly, the Court accepts the Recommendation of the Magistrate Judge to dismiss this Claim Four, to the extent it alleges retaliation, denial of access and violation of equal protection as against all defendants, and to the extent it alleges a violation of the Eighth Amendment as against all defendants--other than Defendant Johnson against whom the Eight Amendment claim will be retained.

**Claim Five**

Plaintiff's fifth claim alleges that Defendants Ragland, Briggs, Williams, and O'Brien refused to allow him to attend Catholic Mass for six months as retaliation for filing grievances and in violation of the First, Fifth and Fourteenth Amendments (Revised Complaint at 11). He asserts that he was denied his right for the "pretextual reason" that he did not have a prison job at that time, but that other inmates without jobs are allowed to attend services. *Id.* He alleges that when he filed a grievance over this matter, Defendants Ragland and "his subordinate Jerry Briggs" modified, or arranged to be modified, his recorded religious affiliation in the DOC computer system, changing it from "Catholic" to "Agnostic" in order to "pretextually justify" denial of access to religious programs (*id.* at 11-12). He further alleges when he filed a grievance over this matter, Defendants Briggs, Williams and O'Brien responded to his grievance, but along with Defendant Ragland, "maintained . . . their deception." (*Id.* at 12).

The Magistrate Judge first recommends dismissing plaintiff's retaliation claim as no allegations support a claim for retaliatory conduct, and dismissal of his equal protection claim as there are no allegations that he is a member of a "suspect class." (Recommendation at 22-23). Plaintiff's Objection asserts that his complaint does support a claim for retaliation because he stated the reasons given were "pretextual" and the conduct began "only 3 months after the other actions by defendants were initiated against me." (Objections at 10). The Court disagrees with plaintiff's argument.

If defendants' actions as alleged were proven to be pretextual and not legitimate enforcement of penological concerns, the claims might survive under the First Amendment, but pretext does not necessarily equate with retaliation.  In addition, the Court has already rejected the notion that the actions allegedly taken by defendants as described in Claims One and Two were sufficiently proximate to plaintiff's filing of his civil lawsuit to establish an inference of retaliation.  Accordingly, the Court accepts the Recommendation of the Magistrate Judge that the subclaim for retaliation contained within Claim Five should be dismissed.

Plaintiff also objects to the denial of his subclaim for violation of equal protection.  But as noted above, such a claim requires not only allegations that others similarly situated were treated differently, but that the motive was discriminatory.  The Court finds no such allegations in the fifth claim and therefore the equal protection subclaim is properly dismissed.

The Magistrate Judge, however, also recommends that defendants' motion be granted as to Claim Five to the extent that a claim for violation of the plaintiff's First Amendment right to free exercise of religion is implicated (Recommendation at 23-25). The Magistrate Judge reached this result, in part, because he found that "[a]lthough these allegations are sufficient to state a claim for violation of the First Amendment right to free exercise, they are not sufficient to hold any one defendant liable." (*Id.* at 24).

The Court does not read plaintiff's Revised Complaint as narrowly. In his general description of his fifth claim, plaintiff states that "Defendants Ragland, Briggs, Williams,

and O'Brien . . . refused to allow Slusher, a Catholic for 51 years, to attend Catholic

Mass for 6 months." (Revised Complaint at 11).  His descriptive paragraphs then

explain how these defendants allegedly carried out this proscription, including by use

of what plaintiff claims was a "pretext" regarding preventing inmates without jobs from

attending religious services, allegedly altering information in the "DOC computer

system," apparently asserting some unwritten regulation limiting inmates to attending

only the primary services of their faith, and then denying his grievances regarding

these activities.  (*Id.* at 11-12).  To be sure, to prove these allegations against a

particular defendant will require more specificity than set forth in the complaint, but this

Court cannot find that these allegations fail to state a claim against these four

defendants for violation of plaintiff's First Amendment rights.

Therefore the Court declines to accept the Magistrate Judge's Recommendation

that all of Claim Five be dismissed.  The defendants' motion to dismiss Claim Five is

denied as to the First Amendment violations alleged in Claim Five against Defendants

Ragland, Briggs, Williams, and O'Brien, but granted as to the other subclaims

contained in that claim.

**Claim Six**

Plaintiff's sixth claim alleges that Defendants Reilly, Kelly, Ragland, Kahanic and

O'Brien, as well as the "LCF Management Team" (still unnamed) refused to grant him

any of the available inmate jobs for which he was best qualified, in retaliation for

redressing grievances in violation of his First, Fifth and Fourteenth Amendment rights

(Revised Complaint at 12).

20

The Magistrate Judge first recommends dismissing plaintiff's retaliation claim as against Defendants Ragland, Kahanic and O'Brien, only, finding no allegations to support a claim for retaliatory conduct on their part, but sufficient allegations of retaliatory conduct by Defendants Reilly and Kelly to support this claim (Recommendation at 27).  In his Objection plaintiff states that the Magistrate Judge "correctly assesses" his claim against Defendants Reilly and Kelly but "omits any analysis of the other defendants' involvement." (Objection at 13).  He asserts the other defendants had ongoing involvement in all the events, direct knowledge of the events and chose to avoid their obligation to exercise control or discretion (*id.*).  Nonetheless, neither in his complaint allegations nor in his Objection does plaintiff allege facts that suggest that the other defendants, as opposed to Defendants Reilly and Kelly, acted with a retaliatory motive.  He alleges the job placement refusals occurred between November 2002 and February 2004.  But as noted above, this time period was many months after plaintiff filed his first civil complaint. There is simply no basis pled on which to infer that these actions were taken out of retaliation.

This Court also agrees, despite plaintiff's Objections, that Claim Six does not set forth a claim under the equal protection clause, for even if plaintiff were treated differently than other inmates, there are no allegations of a discriminatory motive on the part of the defendants.  Nor does Claim Six plead a claim for denial of access to the courts, as the alleged denial of a prison job has no connection to plaintiff's access to the courts, even if he does allege in his compliant and assert in his Objections that the job action was taken in retaliation for accessing the courts as discussed above.  Finally,

plaintiff makes no objection to the Recommendation to the extent it finds his due process subclaim subject to dismissal.

Accordingly, the Court accepts the Recommendation of the Magistrate Judge and orders that Claim Six be dismissed as against all defendants to the extent it purports to allege subclaim s for denial of access to the courts, equal protection and due process.  Defendants' motion to dismiss the retaliation subclaim contained in Claim Six is GRANTED as to Defendants Ragland, Kahanic and O'Brien and the LCF Management Team but DENIED as to Defendants Reilly and Kelly.

**Claim Seven**

Plaintiff's seventh claim alleges a somewhat convoluted series of events essentially involving restoration of plaintiff to his prison job pursuant to a court order, subsequent loss of that job after registering a complaint, resultant denial of law library privileges and alleged inability thereby to file timely a *certiorari* petition with the United States Supreme Court.  As note above, the Magistrate Judge construed this seventh claim to allege subclaims for violations of (1) the plaintiff's First Amendment right to access the courts; (2) the plaintiff's right to be free from retaliation for exercising his constitutional right to access the courts; (3) the plaintiff's equal protection rights; and (4) the plaintiff's procedural and substantive due process rights (Recommendation at 30).

The Magistrate Judge found that the equal protection subclaim should be dismissed because plaintiff had not alleged that the other plaintiffs who were not denied library privileges were similarly situated (*id.* at 33).  The Court agrees that the

equal protection subclaim should be dismissed for that reason and because there are no allegations of a discriminatory motive on the part of any defendant.

The Magistrate Judge found that the due process subclaim should be dismissed because plaintiff had not alleged any allegations relevant to a denial of procedural due process and his other claims were protected under more specific constitutional provisions (*id.*).  Plaintiff has made no objection to this recommendation.

The Magistrate Judge also found that the seventh claim contained allegations that arguably suffice to allege a cause of action for retaliation and a claim for violation of the First Amendment right to access to the courts (Recommendation at 32).  However he also found that the allegations regarding each of these two subclaims were insufficient to hold liable any one defendant for the seventh claim, as it was brought against Defendants Reilly, Kelly, Estep, Johnson, Kahanic, O'Brien and the LCF Management Team, but did not allege which defendant personally participated in the alleged retaliatory job termination or limited his access to the law library.  Thus the Magistrate Judge recommends dismissal of these subclaims (*id.* at 32-33).  However, the Recommendation does not specify whether the dismissal should be without prejudice and leave to amend.

Plaintiff's Objection states that Defendants Reilly and Kelly, the defendants against whom he alleged job retaliation as of November 2002 in Claim Six, were the same defendants who terminated him in retaliation "on June 2006," which the Court understands to be a typographical error that should read "2004."  (Objections at 14).  Certainly, the Revised Complaint did not so plead.  However, given the fact that the

23

retaliation subclaim of Claim Seven otherwise appears to state a claim for relief, the Court will permit plaintiff to amend that part of the seventh claim to allege his retaliation claim against Defendants Reilly and Kelly.

Plaintiff's Objections also take issue with the Magistrate Judge finding that plaintiff has not named those responsible for denying law library access, but candidly admits that plaintiff does "not know who, if anyone directly prevented my law library access." (Objection at 16).  Rather, he asserts, the defendants were informed by him of the "ongoing deprivation" and refused to alleviate the deprivation of access, although each had the power to do so (*id.*)   Plaintiff asks the rhetorical question: "Does this not adequately create supervisor liability?" citing to *McLelland v. Facteau,* 610 F.2d 693, 697 (10th Cir. 1979).

*McLelland,* however, addressed a situation where the plaintiff was alleging not a direct violation by the defendants, but rather a failure of supervision over subordinate officers, which plaintiff here has not alleged.  Moreover, the continued vitality of the basis for supervisor liability in that case was called into doubt long ago.  *See Canton v. Harris,* 489 U.S. 378 (1989); *Tesoro v. Zavaras*, 46 F. Supp. 2d 1118, 1124 n.10 (D. Colo. 1999).  Thus, this Court agrees with the Magistrate Judge and finds that plaintiff's claim for denial of access to the law library is subject to being dismissed for failure to state a claim against any individual defendant named in the seventh claim.

Accordingly, the defendants' motion to dismiss is GRANTED as to the equal protection, due process and denial of access subclaim s contained in the seventh claim for relief as to all defendants.  The motion to dismiss is GRANTED with prejudice as to

the subclaims for retaliation with respect to Defendants Estep, Johnson, Kahanic,

O'Brien and the LCF Management Team, but without prejudice as to Defendants Reilly

and Kelly, and plaintiff is granted leave to amend the seventh claim as to name those

two defendants only as to the retaliation claim.

### Claims Under the State Constitution

The Magistrate Judge recommends dismissal of any purported state

constitutional claims on the grounds that plaintiff has an adequate remedy under 42

U.S.C. § 1983 for all of his claims, and thus under the authority of *Arndt v. Koby*, 309

F.3d 1247, 1255 (10th Cir. 2002) his purported state constitutional claims should be

dismissed (Recommendation at 34).  Plaintiff's objection set forth no cogent reasons to

not accept the recommendation of the Magistrate Judge, admitting, for example, that he

does not know which of his claims might come under state law due process and which

come under federal law due process (Objection at 17).

Accordingly, to the extent the Revised Complaint purports to set forth separate

claims premised on the Colorado constitution, such claims are dismissed.

### Claims for Compensatory Damages

The Magistrate Judge recommends dismissal of plaintiff's claims for

compensatory damages as no physical injury is alleged in any claim other than the

fourth claim, as required under 42 U.S.C. § 1997e(e) (Recommendation at 34-35).

In his Objection plaintiff appears to contend that his allegation of physical injury

set forth in the fourth claim is somehow read into the other claims and therefore he

should be permitted to recover compensatory damages under each claim (Objection at 19). Plaintiff misunderstands the import of the applicable law.

The statute precludes plaintiff from recovering damages for mental or emotional suffering in connection with any claim where no physical injury is alleged. This is not to say that he cannot recover damages for violations of his constitutional rights, possibly including nominal and punitive damages if he prevails. The Court has again reviewed the Prisoner's Revised Complaint and agrees with the Magistrate Judge that Claim Four is the only claim where physical injury is alleged to have been caused by the alleged constitutional violation, and therefore plaintiff claims for compensatory damages are limited to that claim.

### Claims for Injunctive and Declaratory Relief

The Magistrate Judge recommends dismissal of plaintiff's claims for injunctive and declaratory relief on the basis that such claims are moot now that plaintiff has been transferred out of the Limon Facility and granting the relief requested would have no effect on the defendants' behavior (Recommendation at 35-36).

Plaintiff states in his Objection that his transfer from the Limon facility to the Fremont facility makes it more than a "theoretical possibility" that he is still under one defendant's supervision as Defendant Estep, formerly the warden at Limon, has now become the warden at Fremont (Objection at 19-20). This may be so, but it does not change the rationale of the Recommendation, for as noted above, there are no remaining claims against Warden Estep. Thus the plaintiff's claims for injunctive and declaratory relief are DISMISSED.

**CONCLUSION**

The Defendants' Motion to Dismiss Plaintiff's Revised Complaint(Dkt. # 76) is GRANTED in part and DENIED in part.

It is GRANTED to the extent that Claims One and Three are dismissed as to all defendants and as to all claims contained therein for failure to state claims for relief; it is also GRANTED to the extent that Claim Two is DISMISSED for failure to state a claim for retaliation, violation of plaintiff's right to redress grievance and for violation of the Fourteenth Amendment, **but not** to the extent it alleges a denial of due process by Defendants Johnson, Estep, Samu and Rusher arising from the plaintiff's punitive segregation.

The Motion is GRANTED to the extent that Claim Four is DISMISSED for failure to state a claim for relief for retaliation, or for any violation of the First, Fifth, Eighth or Fourteenth Amendments as to all defendants **except** for Defendant Johnson, and to the extent that Claim Five is DISMISSED for failure to state a claim for relief for retaliation, or for any violation of the Fifth or Fourteenth Amendments, **but not** to the extent it alleges a claim for violation of the plaintiff's rights under the First Amendment.

The Motion is GRANTED to the extent that Claim Six is dismissed for failure to state a claim for relief for retaliation, or for any violation of the First, Fifth or Fourteenth Amendments as to all defendants **except** for the First Amendment claim against Defendants Reilly and Kelly.

The Motion is GRANTED to the extent that plaintiff's claims for compensatory damages are dismissed except for those sought in connection with Claim Four.

The Motion is GRANTED to the extent that Claim Seven is dismissed against Defendants Estep, Johnson, Kahanic, O'Brien for failure to state a claim for relief as to all claims alleged against them, as to Defendants Reilly and Kelly, as to the denial of access, equal protection and due process claims alleged against them, but plaintiff is granted leave to amend the seventh claim as to name Defendants Reilly and Kelly only, as the defendants to the retaliation claim arising from plaintiff's loss of a job.

The Motion is GRANTED to the extent that plaintiff's claims purport to allege violations of the Colorado constitution and to the extent that the complaint seeks injunctive and declaratory relief.

The Motion is DENIED to the extent Claim Two alleges a denial of due process by Defendants Johnson, Estep, Samu and Rusher arising from the plaintiff's punitive segregation, and to the extent that Claim Four alleges violations of plaintiff's Eighth Amendment rights by Defendant Johnson, only.

It is further DENIED to the extent Claim Five alleges violations of plaintiff's First Amendment rights by Defendants Ragland, Briggs, Williams, and O'Brien, and to the extent that Claim Six alleges retaliation by Defendants Reilly and Kelly against plaintiff for exercising his First Amendment right to redress grievances.

Also, the Motion is DENIED to the extent that Claim Four seeks compensatory damages, and to the extent the complaint seeks nominal and punitive damages.

DATED:  November 21, 2006        BY THE COURT:

*s/ Phillip S. Figa*

_____

Phillip S. Figa
United States District Judge