IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 04-cv-02187-WDM-KLM

F. DAVID SLUSHER,

    Plaintiff,

v.

ENDRE SAMU, et al.,

    Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

    This matter is before me on the Motion for Summary Judgment (doc no 189) filed by Defendants. Plaintiff opposes the motion. Although I originally referred the motion to a Magistrate Judge, I now withdraw that referral and will rule on the motion myself. After a review of the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion will be granted in part.

Background

    Plaintiff, acting *pro se*, initiated this lawsuit pursuant to 42 U.S.C. § 1983. Plaintiff's claims are based on several separate incidents occurring while he was incarcerated at the Limon Correctional Facility (LCF)[1], each involving different defendants. The governing pleading at this time is Plaintiff's "Revised Prisoner Complaint" (doc no 67), which asserted seven claims, each consisting of several

---

    [1]Plaintiff is no longer housed at LCF (doc no 53).

subparts. However, only a portion of those claims remain at issue following the late Judge Philip S. Figa's Order (doc no 119) adopting the recommendations of Magistrate Judge Boyd N. Boland (doc no 101) and dismissing several of Plaintiff's claims and subclaims[2]. The relevant disputed and undisputed facts concerning the surviving claims are as follows:

In October 2002, a correctional officer was murdered at LCF by an inmate. The murder resulted in a facility wide shake-down. Plaintiff's legal documents were confiscated. On October 21, 2002, Plaintiff wrote a note to Defendant Johnson offering to provide information concerning the murder in exchange for the return of his legal documents; Plaintiff suggested that if his demand were not met, he would release his information to the media. Johnson wrote an incident report about the note. Defendant Rusher was Captain and a Shift Commander at LCF in 2002. Upon notification of the contents of Plaintiff's note, Defendant Rusher, pursuant to Administrative Regulation No. 600-1, removed Plaintiff from the general population and placed him in segregation pending an investigation.[3] Rusher believed that Plaintiff's note could be construed as a threat against the facility and attempted extortion and that Plaintiff could be at risk in the general population. Rusher's authority extends only to the removal of a prisoner from the general population; the decision to keep a prisoner in segregation until a discplinary hearing belongs to the warden of the facility or the designee of the warden.

---

[2]This matter was assigned to me on January 10, 2008 (doc no 231).

[3]Plaintiff contends that his placement in segregation was "punitive" and not administrative, but provides no acceptable evidence pursuant to Fed. R. Civ. P. 56 to demonstrate an issue of fact in this regard.

Plaintiff was issued a Notice of Charges and charged with a violation of the Code of Penal Discipline ("CODP") on October 29, 2002. Plaintiff was charged with "Robbery/Extortion" based on the note. Plaintiff was served with the notice of charges on October 30, 2002 and informed that a disciplinary hearing would be held November 6, 2002.[4] Defendant Samu reviewed the incident report and presented the COPD charges as the disciplinary officer at the hearing. Plaintiff was found guilty of "Bartering" based on Plaintiff's alleged offer to plead to this lesser offense. Plaintiff was given a sentence of 19 days of punitive segregation, from 10/21/2002 to 11/9/2002, with credit for time served; he was therefore removed from segregation upon the conclusion of the hearing. The disciplinary decision was upheld by Defendant Estep. Plaintiff then sought judicial review of the COPD conviction in the Lincoln County, Colorado District Court. On October 6, 2003, The Honorable Stanley A. Brinkley determined there had been irregularities in the disciplinary process and no evidence that Plaintiff had committed the offense of "bartering" as defined in the COPD, or that Plaintiff's offer to plead to this violation was accepted. Judge Brinkley ordered Plaintiff's disciplinary conviction expunged, with the return of all good time credits and other privileges lost as a result of the conviction. The DOC expunged the conviction and eventually returned Plaintiff's employment, good time credits, and other privileges.

Plaintiff has presented his own testimony in the form of affidavits and his verified complaint regarding the conditions to which he was subjected while in segregation pending his disciplinary hearing. Defendants have not offered contradictory evidence

---

[4]The hearing was apparently continued until November 8, 2002.

and so I will take Plaintiff's assertions to be undisputed for the purposes of summary judgment. Plaintiff avers that he did not receive a change of clothing during the 19 days in segregation, that he did not receive library books, that he was not allowed to take his toothbrush and was not given a toothbrush for twelve days, that he was placed in a very cold corner cell (cold enough to cause ice to form on the top of a cup of water) and was unable to sleep because of the cold, that he was subjected to a very bright light all night, that he was not given a full menu of food items, that he was denied his nasal spray for five nights, which was needed to use his "bi-pap" breathing machine (for treatment of sleep apnea), and that he was denied access to his legal papers. There is evidence of a custom of issuing extra blankets to inmates in the corner cells of the segregation unit; it is unclear whether Plaintiff received extra blankets. Defendant Johnson was apparently the supervisor responsible for the unit at the time Plaintiff was in segregation in October 2002. Plaintiff testified in his deposition that he saw Defendant Johnson on at most three occasions in the segregation unit and spoke to him personally once. He also complained to staff and/or sent written complaints daily about the conditions. Plaintiff has produced a document indicating that Johnson received three written complaints during the relevant time period, but those complaints are not in evidence. Plaintiff could not file an official grievance until after his release from segregation. His grievances were denied because he could not provide corroborating documentation.

Plaintiff's third set of incidents revolve around the LCF's refusal to permit him to attend Catholic religious services from January 2003 to June 2003. It was eventually

discovered that Plaintiff's religious affiliation had been changed in the computer system to "agnostic," although it is unknown how this occurred.  Plaintiff submitted an Informal Resolution Attempt on May 8, 2003 on this issue.  Defendant Briggs, a volunteer chaplain, responded to the complaint and informed Plaintiff that he could not attend Catholic services because he was listed as agnostic.  Plaintiff filed a Step I grievance on May 25, 2003.  Defendant Williams responded to the grievance, also denying it on the same grounds but informing Plaintiff that he could complete a change of religion form.  Plaintiff refused to complete the change of religion form.  Plaintiff submitted a Step II grievance, which Defendant O'Brien denied.  Finally, Plaintiff submitted a Step III grievance; Anthony DeCesaro investigated and discovered that Plaintiff's affiliation had been changed in 1995 and arranged for a correction.  Plaintiff was allowed to attend Catholic services after he submitted his Step III grievance.  In his deposition testimony, Plaintiff confirmed that the only communication he had with these defendants were their responses to the complaints and grievances and that these defendants did not otherwise impede his ability to attend the religious services of his choice.  Defendant Ragland was a supervisor during the relevant time period; there is no evidence that Ragland was personally aware of Plaintiff's difficulties in this regard.  Plaintiff believes that Ragland would have received the Informal Resolution Attempt because Briggs reported to Ragland.

Finally, Plaintiff asserts claims based on the failure of the LCF's Garment Factory to rehire him after his COPD conviction and, thereafter, for firing him from the job based on an unexcused absence.  Plaintiff was dismissed from his inmate sewing

job on November 9, 2002, on the grounds that he had been confined in punitive segregation twice in the last eight years (which Plaintiff disputes). After the expungement of his conviction, he was rehired at the sewing facility in early 2004. Plaintiff's employment was again terminated on June 18, 2004. He asserts he had a law library appointment on that day. He claims he also had a 9 a.m. appointment for production of documents in another case. The library was closed and Plaintiff was told to stay in his quarters by the unit supervisor.

Defendant Kelly, a supervisor at the Garment Factory, has presented evidence that he has no hiring or firing authority. Plaintiff purports to dispute this but presents no admissible evidence to contradict this fact, as his evidence consists of hearsay and an ambiguous statement by Kelly regarding a "decision" he made relating to Plaintiff's absence. Defendant Reilly's stated reason for refusing to rehire Plaintiff was the alleged disciplinary violations, as well as a letter written by Plaintiff to a former inmate, in which Plaintiff stated his intent to make Reilly a defendant in another case and to file liens on Reilly's property. Reilly's stated reason for terminating Plaintiff in 2004 was the unexcused absence. Plaintiff's grievances challenging the termination were unsuccessful.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S.

6

242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id*.

## Discussion

All Defendants have asserted the defense of qualified immunity. "In an action under section 1983, individual defendants are entitled to qualified immunity unless it is demonstrated that their alleged conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999). Once a defendant has raised qualified immunity as an affirmative defense, the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). I will address the standards for each of Plaintiff's claims below:

1. Due Process - Placement in Segregation

Plaintiff asserts a claim against Defendants Johnson, Estep, Samu, and Rusher on the grounds that his placement in segregation until his disciplinary hearing deprived

7

him of a protected liberty interest without due process. Defendants argue that Plaintiff cannot prevail on this claim because none of the defendants individually took the action that caused Plaintiff's placement. In addition, Defendants contend that this claim is precluded by the availability of an Eighth Amendment cause of action for the conditions of Plaintiff's confinement. Defendants' third argument is that Plaintiff's allegations do not demonstrate deprivations sufficient to rise to the level of a protected liberty interest. Finally, Defendants assert that even if the conditions of segregation were a violation of due process, Plaintiff cannot establish that his rights were clearly established in 2002.

The Supreme Court has held that a plaintiff may state a claim for deprivation of a protected liberty interest under Fourteenth Amendment for adverse conditions of confinement created by state policies or regulations if they impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The touchstone of the due process inquiry is not the precise language of a state's regulations regarding restrictive conditions of confinement but rather "the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). One difficulty in the analysis concerning punitive or administrative segregation is determining the "baseline" for comparison, as it is unclear whether the atypicality is by reference to conditions of general population incarceration or conditions in the same type of segregation, such as protective custody. *Estate of DiMarco v. Wyo. Dep't of Corr., Div. Of Prisons*, 473 F.3d 1334, 1340 (10th Cir. 2007) (noting that the Supreme Court has not established such a baseline).

8

It is clear that Plaintiff was placed in administrative segregation pursuant to Administrative Regulation 600-1 for safety reasons and until an investigation and disciplinary proceeding were complete; the 19 days in segregation were retroactively labeled punitive segregation upon completion of the disciplinary hearing (and then expunged). Because of this, I cannot conclude that it was the hearing that caused Plaintiff's alleged injury, but rather the decision of Defendant Rusher to place Plaintiff in segregation upon receiving the report of Plaintiff's note and the decision (possibly made by Defendant Estep) to keep Plaintiff there until the disciplinary hearing. Therefore, I agree that the actions of Defendant Johnson, who wrote a true account of the note he received from Plaintiff and otherwise did nothing wrongful with respect to reporting the incident, was too attenuated to have caused Plaintiff's alleged injury. Similarly, Defendant Samu, who interviewed Plaintiff with Johnson and acted as the Disciplinary Officer at the hearing, did not cause Plaintiff to be placed in segregation. Accordingly, I agree with Defendants that judgment should enter in favor of Defendants Johnson and Samu as a matter of law on the due process claim because Plaintiff cannot show causation.

I next turn to whether the deprivations suffered by Plaintiff in segregation amounted to denial of a liberty interest protected by the Due Process clause.[5] The Tenth Circuit has recently identified factors to be considered in determining whether

---

[5] I reject Defendants' argument that Plaintiff's claim arises exclusively under the Eighth Amendment. The Supreme Court in *Sandin* explicitly recognized the contours of a due process claim for prison placement decisions and, as discussed further below, the applicable tests for a due process claim and an Eighth Amendment claim are different.

placement in administrative segregation has due process implications. *See DiMarco, supra,* 473 F.3d at 1342. These include whether: (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate (for example, in *Wilkinson* the placement was reviewed only annually). *Id.* In addition, in weighing these factors, I must be "mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id.*

Applying the factors suggested in *DiMarco*, I conclude that, as a matter of law, Plaintiff's 19 days of segregation did not deprive him of a protected liberty interest. First, placing Plaintiff in segregation related to a legitimate penological interest, including ensuring his safety. If Plaintiff had information about a murder by an inmate and intended to share it, he could have been at risk. In addition, isolating Plaintiff during an investigation of whether he had such information and whether his note amounted to a COPD violation was legitimate. Applying the second factor (and again giving Plaintiff the benefit of all reasonable inferences from the undisputed and disputed facts), it appears that some of the conditions were extreme, particularly the cold and temporary denial of some of Plaintiff's hygiene and medical items. This factor, therefore, could weigh in Plaintiff's favor, although he has not provided much comparative evidence as to whether these deprivations were unusual at LCF.[6]

---

[6]It appears that the cold conditions were not necessarily atypical, as Plaintiff contends it was "well known" that corner cells were cold and that extra blankets were often issued.

However, the remaining two factors do not help Plaintiff.  It is undisputed that his placement in segregation did not increase the duration of confinement and that the retroactive relabeling of his time as punitive segregation was expunged and all privileges returned.  Finally, the segregation was not for an indefinite or undetermined duration, but rather only until his disciplinary hearing, which was set shortly after he was removed from the general population.

Given the relatively short duration of Plaintiff's time in segregation, the dearth of comparative evidence about conditions in the general population as well as other protective or punitive placements, the legitimacy of the purpose of the confinement and apparent efforts by LCF staff to mediate some of Plaintiff's complaints (Plaintiff admits that he received his nasal spray after five days and eventually got a toothbrush), I cannot conclude that Plaintiff's placement in segregation imposed such an atypical and significant hardship that it amounted to the deprivation of a protected liberty interest. Accordingly, summary judgment should enter against Plaintiff on the due process claim as a matter of law.

    2.    <u>Eighth Amendment - Conditions While in Segregation</u>

Plaintiff asserts that the conditions of his confinement in segregation amounted to cruel and unusual punishment in violation of the Eighth Amendment.  Defendant Johnson is the only remaining defendant for this claim.  Defendants argue that Plaintiff cannot show that Johnson was aware of Plaintiff's particular conditions of confinement or that Johnson received Plaintiff's written complaints.  Therefore, Defendants contend, Plaintiff cannot show that Defendant Johnson personally participated in creating the

11

conditions of confinement underlying Plaintiff's claim.

Prison officials must "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citations omitted). To prevail on a "conditions of confinement" claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is "'sufficiently serious' " to implicate constitutional protection, and (2) prison officials acted with "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). In order to satisfy the first requirement, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. Deliberate indifference, the second requirement, "entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id.* at 835. This standard is equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id.* at 836-37. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838.

"While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). In this regard, "the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not

rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Id.* (citations omitted).

Giving Plaintiff the benefit of all reasonable inferences, Plaintiff may be able to present evidence that, if believed by a jury, could show that he was subjected to conditions posing a substantial risk of serious harm, particularly the alleged severe cold, inadequate food, and denial of necessary medical equipment. However, even viewing the evidence in the light most favorable to Plaintiff, Plaintiff has not provided evidence to show that Johnson was deliberately indifferent to Plaintiff's hardship. Plaintiff's evidence is that Johnson received at least three written complaints, one of which concerned Plaintiff's "bi-pap" machine but which otherwise contested the reason for his placement in segregation. The evidence also shows that in response to the complaints, Plaintiff received his "bi-pap" machine after two nights and, thereafter, the nasal spray he needed to use it.[7] Moreover, although Johnson has admitted knowledge of cold conditions in the corner cells, there is no evidence that he knew that Plaintiff was exposed to cold so severe that it posed a serious risk to his health or that Plaintiff did not receive additional blankets in accordance with the usual practice of the prison. Given Plaintiff's burden to overcome the qualified immunity defense, I conclude that Defendant Johnson is entitled to summary judgment on this claim.

---

[7]The only other specific complaint Plaintiff believes was in those written communications was his lack of a toothbrush. Although this deprivation was surely uncomfortable and unpleasant, given the short duration, I cannot conclude that it was a "sufficiently serious" deprivation giving rise to an Eighth Amendment cause of action.

13

### 3. First Amendment Claim for Denial of Participation in Catholic Mass

It is essentially undisputed that the only basis upon which Plaintiff asserts liability for this claim against Defendants Briggs, Williams, and O'Brien is that they denied Plaintiff's grievances concerning his inability to attend Catholic religious services. Similarly, the only grounds for liability against Defendant Raglan is that he was the supervisor of Defendant Briggs and Plaintiff infers from this that Raglan must have known that Plaintiff was denied access to the religious services of his choice. This is insufficient to impose liability on these defendants as a matter of law. *Larson v. Meek*, 240 Fed. Appx. 777, 780, 2007 WL 1705086 at *3 (10th Cir., June 14, 2007) (citing *Lomhold v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (per curiam)) (denial of grievances, standing alone, is insufficient to establish personal participation in an alleged constitutional violation). The cause of Plaintiff's inability to attend services was the change to Plaintiff's listed religious affiliation in the computer system. There is no evidence any of these defendants made this change, or that they were aware that administrative regulations permitted an inmate to attend any services regardless of affiliation, as argued by Plaintiff. Moreover, Plaintiff only had to submit a change of affiliation form to solve the problem, which he declined to do. Summary judgment against Plaintiff and in favor of these defendants is warranted.

### 4. First Amendment - Retaliatory Failure to Rehire

Plaintiff asserts that after his disciplinary hearing, Defendants Kelly and Reilly, who ran the LCF Garment Factory, refused to rehire him on pretextual grounds in retaliation for Plaintiff's filing of grievances and lawsuits. The stated reason for

discharging and then not rehiring Plaintiff was that he had two COPD violations resulting in segregation; after the court-ordered expungement of the 2002 disciplinary sentence and other related proceedings, Plaintiff was rehired. In the motion for summary judgment, Reilly also states that he did not wish to work with Plaintiff because of Plaintiff's expressed intent to file a lien on Reilly's property. Defendants argue that Plaintiff cannot show that Kelly and Reilly violated Plaintiff's First Amendment rights because Plaintiff's evidence does not demonstrate specific facts showing retaliation. Defendants further argue that Kelly has no authority to make hiring decisions and therefore cannot have caused Plaintiff's alleged harm.

Plaintiff has presented no evidence to create a genuine issue of fact as to Kelly's authority to hire or fire inmate employees; accordingly, I agree that this claim should be dismissed against Kelly. Moreover, as discussed below, I conclude that the defendants are entitled to qualified immunity on this claim.

Access to courts is a fundamental right protected by the Constitution, including the First Amendment right to petition the government for redress of grievances. *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985). "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948. However, a prisoner is "not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prisons merely because he has engaged in protected activity." *Peterson v. Shanks*, 149 F.3d

1140, 1144 (10th Cir. 1998). Accordingly, a plaintiff must allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights"–i.e., the plaintiff must prove that "but for" the retaliatory motive, the adverse response would not have taken place. *Id.* (citations omitted).

As an initial matter, Plaintiff does not present evidence of any grievance filed against Reilly or Kelly before November 2002, when the disciplinary conviction occurred, although it appears he later filed grievances over the Garment Factory's failure to rehire him. Moreover, in his complaint, Plaintiff's only evidence of retaliatory motive is hearsay statements from other inmates, which are inadmissible. *See* Revised Prisoner Complaint, p. 13 at ¶ 6. However, in his response to the motion for summary judgment, Plaintiff argues that Reilly's concern about Plaintiff's intent to file a lien in connection with a lawsuit demonstrates retaliation because Plaintiff's statements in his January 2003 letter and related litigation are activities protected by the First Amendment.

Plaintiff wrote a letter to a friend, apparently a former inmate, dated January 7, 2003, which was intercepted and copied by LCF authorities. It is undisputed that Reilly received a copy of the letter. Plaintiff refers to the loss of his sewing job and lawsuit he filed to challenge the disciplinary conviction and job loss. "I have already filed the complaint, which is Case No. 02CV56 in Lincoln County." Exh. A-17 to Motion for Summary Judgment (doc no 189-19). Plaintiff goes on to say, "I remember us talking about liens you have filed in the past, and I remember how much you loved John Reilly!! (ha ha)." *Id.* Plaintiff then informs his friend that he plans to add Reilly and

16

Kelly as defendants to the lawsuit, and suggests, "if you wanted to 'participate,' . . . perhaps you might want to help me file liens on these people (or just John Reilly, for shits and grins)." *Id.* He concludes the topic by stating, "I would sure like to get some 'get back' at him and the others." *Id.*

The "'right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious.'" *Schlicher v. Thomas*, 111 F.3d 777, 781 (10th Cir. 1997) (citations omitted). While a successful party in a lawsuit may obtain a judgment lien to assist in recovering a court-ordered monetary award, a reasonable officer reading this letter could conclude that this was not Plaintiff's intent, but rather that Plaintiff planned to file spurious liens against Reilly's property. Accordingly, while Plaintiff's use of the grievance and judicial systems to vindicate his constitutional rights and protest his conditions of confinement would be protected, it is much less clear that First Amendment protection extends to a letter that could reasonably be construed as expressing the intent to file an illegitimate lien or malicious legal proceedings. *See DeFranco v. Wolfe*, C.A. No. 04-230 Erie, 2007 WL 4973855 (Nov. 8, 2007, W.D. Pa) (inmate's threat of physical violence against corrections officer was not speech protected by First Amendment, but threat to sue Department of Corrections was protected activity for which defendants could not retaliate against inmate). Neither party has identified legal authority addressing a circumstance like this and my research also has been unsuccessful. Thus, I conclude that even if Plaintiff's letter was protected activity and the refusal to rehire him was in retaliation for the content

17

expressed therein, there was no clearly established law putting Reilly on notice that his conduct was unconstitutional. Accordingly, he is entitled to qualified immunity on this claim.

     5.     <u>First Amendment - Retaliatory Discharge</u>

Finally, Plaintiff argues that he was discharged from his sewing job in June 2004, a few months after he was rehired, in retaliation for his grievances and lawsuits. Defendants again argue that this claim fails against Defendant Kelly because Kelly did not have decision-making authority and could not have personally participated in any alleged violation. Defendants argue that Reilly cannot be liable because Plaintiff cannot show any causal connection between his protected activity and his discharge. In addition, Defendants contend that Plaintiff's unexcused absence was a legitimate reason to terminate Plaintiff's employment.

I agree that Plaintiff has not presented evidence showing that Defendant Kelly had any authority or motivation in the termination decision; indeed, Plaintiff admitted in his deposition that he had no evidence that Kelly made the decision to dismiss him. I disagree with Defendants, however, about Defendant Reilly. Plaintiff has presented evidence that he filed a successful grievance about conditions in the Garment Factory in May 2004 and that, as a result, Reilly had to make changes in the factory. Plaintiff asserts that Reilly was angry at Plaintiff because of this. Plaintiff also presents evidence that he had filed grievances concerning his back pay and that the grievances were unresolved in May and June 2004.

Plaintiff has also presented some evidence that the reason given for his

termination was pretextual. He avers that this was his first unexcused absence in eight years and Defendants have not disputed this. In addition, he presents evidence that he was ordered to stay in his cell by the unit supervisor, a Lieutenant Strode, and that Reilly knew this. Moreover, there is some conflicting evidence about whether one or three unexcused absences was proper grounds for dismissal.

Given the close proximity between Plaintiff's grievances and his termination, as well as the additional facts from which a jury could reasonably infer pretext, I conclude Plaintiff has shown specific facts supporting his claim that Defendant Reilly terminated Plaintiff's employment in retaliation for protected conduct. Moreover, the law in this regard was clearly established at the time. Accordingly, summary judgment in favor of Defendant Reilly is not appropriate.

Accordingly, it is ordered:

1. Defendants' Motion for Summary Judgment (doc no 189) is granted in part.
2. Summary judgment shall enter against Plaintiff and in favor of defendants on the following claims: Plaintiff's due process claim against Defendants Johnson, Estep, Samu, and Rusher; Plaintiff's Eighth Amendment claim regarding the conditions of his confinement in segregation against Defendant Johnson; Plaintiff's First Amendment interference with religion claim against Defendants Briggs, Williams, O'Brien, and Raglan; Plaintiff's First Amendment retaliation claim for failure to rehire against Defendants Kelly and Reilly; Plaintiff's First Amendment retaliation claim

19

based on the June 2004 dismissal from the Garment Factory against Defendant Kelly.

3. Plaintiff's First Amendment retaliation claim based on the June 2004 dismissal from the Garment Factory against Defendant Reilly remains pending.

DATED at Denver, Colorado, on March 21, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge